Mary Chiappetti, Plaintiff-Appellee, *v.* Anne Knapp, Formerly Anne Chiappetti, Defendant-Appellee—(Thomas A. Mass *et al.*, Petitioners-Appellants.)

(No. 56796;

First District (2nd Division)—June 25, 1974.

Richard F. McPartlin, of Chicago (Thomas A. Mass, of counsel), for appellants.

Kent R. Brody, of Chicago (Bernard B. Brody, of counsel), for appellee.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

This appeal arises from a series of lower court rulings relating to attorneys' fees, culminating in an order of 24 September 1971, which was regarded as dispositive of the issue and from which this appeal in part was taken.

The principal action was brought in the Circuit Court of Cook County, Chancery Division, by Mary Chiappetti (plaintiff below, hereafter plaintiff, and not a party to this appeal) against Anne Knapp (appellee and defendant below, hereafter defendant) to declare plaintiff the sole beneficial owner of certain property standing in the name of defendant (which property is located at 6616 West Roscoe Street, Chicago, Illinois, hereafter the Roscoe Street property). Defendant retained as counsel Thomas A. Mass (appellant and petitioner below, hereafter petitioner) to defend her in this action. All parties involved concede that there was an agreement of some sort regarding attorneys' fees entered into between petitioner and defendant at that time, and that a retainer fee of $600 was then paid.

During the course of the trial, plaintiff and defendant agreed to compromise and settle their differences. A decree effectuating the settlement agreement was entered by the trial court on 5 May 1971. It reads in pertinent part as follows:

"WHEREFORE, it is ordered, adjudged and decreed by the Court as follows:

\*   \*   \*

3. The Defendant Anne Knapp shall further direct said escrowee to make disbursements of the net proceeds from the sale of the real estate aforesaid as follows:

\*   \*   \*

c) To pay to the Defendant's attorneys Mass & Miller a sum to be determined by the Court and to be payable on depositing in said escrow a certified copy of said Order relating to said fees.

\*   \*   \*

7. That the Court expressly retain jurisdiction of this matter in order to effectuate the agreement between the parties and to provide for the best interests of the parties hereto, more specifically:

a) To determine the amount of fees for the attorneys of record and other related costs thereto;   \*   \*   \*."

On 15 July 1971, petitioner, alleging an express oral agreement with defendant to pay for his services at the rate of $40 an hour, stated in a petition to the court that he had expended 100 hours of time "in connection with defending the wrongful claim made by the plaintiff." He asked the court to award him $4000 in attorneys' fees from the escrow fund provided for in the decree of 5 May 1971, or, if the court determined that a lesser amount was due from the escrow fund, that plaintiff's attorneys pay the difference.

In response to this petition, the trial judge entered an order on 21 July 1971. It read in pertinent part as follows:

"It is further ordered that the attorneys' fees of said Mass and Miller is ordered to be in the sum of one thousand and nine hundred ($1900.00) dollars and the Escrowee shall pay said $1900.00 to said Mass and Miller forthwith."

On 4 August 1971, the trial judge entered an order in response to a "Petition for Instructions" by the trustee appointed under the decree of 5 May 1971. It reads in pertinent part as follows:

"It is hereby ordered as follows:

1. The amount set as attorneys' fees for Mass, Miller & Josephson and Ader & Ader in the order entered July 21, 1971 are [sic] conclusive as to all sums of money owed to such attorneys by any party in interest in this cause, including fees and costs, except as herein provided.
   * * *

3. With the exception of Mary Chiappetti and with the exception of moneys being paid hereunder, all claims of all other parties to the trust fund are barred and are deemed to be full paid, including all clients of Mass & Miller as well as those of Ader & Ader."

Troubled by the language of the above-quoted parts of the 21 July and 4 August orders, petitioner on 3 September 1971 requested the trial judge to vacate "so much of paragraphs 1 and 3 of the Order of August 4, 1971 as purports to determine the amount due petitioners as attorneys' fees from Ann Knapp * * *" and to clarify the order of July 21, 1971, "* * * to show that the amount awarded Mass and Miller * *. * as attorneys' fees from the proceeds of the escrow, was solely from the proceeds of the escrow, and not determinative of the value of the services rendered on behalf of the defendant * * * and that said Order should not be construed to affect the contractual relationship between the defendant * * * and her attorneys, nor set a total fee due from said defendant * * *."

On 24 September 1971, the trial judge entered an order denying petitioner's request without a hearing. The order stated no reason for the denial.

The notice of appeal filed in the instant case discloses that petitioner is appealing both from the denial of the petition of 3 September 1971 and from Paragraphs 1 and 3 of the order of 4 August 1971. The specific relief sought by the appeal is the reversal of the order of 24 September 1971 denying the petition of 3 September 1971, and the granting of the said petition.

The only real issue before us is whether the decree entered by the trial judge on 5 May 1971 and his subsequent orders of 15 July, 4 August, and 24 September 1971, had the effect of rendering the question of *total* attorneys' fees due petitioner from defendant in connection with this case *res judicata*.

Petitioner claims to have entered into an oral agreement with defendant relating to attorneys' fees when petitioner was first retained. Petitioner further asserts that, when the settlement agreement was entered into, petitioner and defendant agreed that the provision in the settlement agreement for the court to set the attorneys' fees which were to be paid out of the proceeds of the sale of the Roscoe Street property would in no way affect their existing oral agreement. As evidence supporting this assertion, petitioner points to a payment of $500 made by defendant to him after the settlement agreement. Petitioner's main contention on appeal is that the trial judge's decree and subsequent orders could not have been *res judicata* as to the question of *total* attorneys' fees since petitioner was not a party to the settlement agreement and, even if he were, the decree and orders in fact were only determinative of the amount of attorneys' fees which were to come from the sale of the Roscoe Street property.

Defendant, on the other hand, while denying any express agreements regarding attorneys' fees, contends that, even if there were such an agreement, petitioner, by approving the decree in question with his own signature, became a party to it and is thereby estopped by the doctrine of res judicata from asserting any claim for attorneys' fees not provided for in the decree. Defendant also asserts the common law doctrine of merger, insisting that, whatever prior agreements there had been between her and petitioner, such agreements were merged into the subsequent decree upon petitioner's approval of it.

■■ Examining petitioner's signature as it appears on the 5 May decree, it reads in context as follows:

"Approved:
Ader & Ader
by *(signature of Mr. Ader)*
 Attorneys for Plaintiff

MASS & MILLER
by *(signature of Petitioner)*
 *Attorneys for Defendant*" (Emphasis ours.)

The legend under the signature of the petitioner on this document makes it clear that he intended to approve its contents as attorney for the defendant. The client-attorney relationship is one of principal-agent.

(*Feiertag v. Reichmann* (1959), 21 Ill.App.2d 215, 157 N.E.2d 818.) It is an established rule of law that an attorney employed to defend a suit has no authority to compromise, to give up any right of his client, or to consent to judgment against his client without the express consent or authorization of that client. (*City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill.App.3d 438, 292 N.E.2d 154.) As an agent, an attorney has no right to prosecute a claim contrary to the wishes of his client. The attorney's interest in his fees is subordinate to the client's wishes with regard to the prosecution of the suit. *Feiertag v. Reichmann, supra.*

Such authority compels us to conclude that petitioner's signature, as attorney for defendant, on the 5 May decree was approval on behalf of defendant of the provisions of that document. As such, petitioner was not individually bound to any of the provisions of the decree. This fact is further established by the absence of defendant's own signature on the document, as well as by the absence of plaintiff's own signature and by the fact that plaintiff's attorney signed on behalf of plaintiff. Moreover, petitioner was not shown to have had any interest of his own in the funds from the sale of the Roscoe Street property prior to the time of the settlement. See *National Bank of Albany Park in Chicago v. Newberg* (1972), 7 Ill.App.3d 859, 289 N.E.2d 197, where the court held that attorney's approval of an order disposing of funds in which the attorney had such a prior interest made him a party thereto.

However, even in the event petitioner's signature had been intended as his individual approval of the 5 May decree, this document in fact only limited the amount of the attorneys' fees available from a specific source (the net proceeds of the sale of the Roscoe Street property). Nowhere does the document purport to be determinative of the total amount of attorneys' fees due petitioner from defendant in connection with this case.

The following language contained in the 5 May decree is illustrative of this fact:

> "The defendant Anne Knapp shall further direct said escrowee to make disbursements *of the net proceeds from the sale* of the real estate aforesaid as follows:
>
> * * *
>
> c) to pay to the defendant's attorneys Mass & Miller a sum to be determined by the Court and to be payable on depositing in said escrow a certified copy of said Order relating to said fees." (Emphasis ours.)

The "said Order" providing attorneys' fees "determined by the Court" was entered on 21 July 1971. It provided: "* * * It is further

ordered that the attorneys' fees of said Mass & Miller is ordered to be in the sum of one thousand nine hundred ($1,900) dollars and the *escrowee* shall pay said $1,900 to said Mass & Miller." (Emphasis ours.)

Considering the 5 May decree together with the 21 July order, it is clear that the trial judge only purported to determine the amount of attorneys' fee to be made available from the proceeds of the sale of the Roscoe Street property. Both documents refer to the escrowee making payment to petitioner, and the only funds ordered to be deposited in escrow in this action were the net proceeds of the sale of the Roscoe Street property. There is no language in either of these documents, when taken together, that could support the defendant's contention that the trial judge intended his order to be determinative of the issue of the *total* amount of attorneys' fees due petitioner from defendant. It is necessary to understand this fact in order more clearly to focus on the meaning of the trial judge's subsequent orders.

The 4 August order was entered in response to a "Petition For Instructions" by the trustee-escrowee appointed by the court under the provisions of the 5 May decree creating a trust for the benefit of plaintiff. With regard to attorneys' fees the order stated:

> "The amounts set as attorneys' fees for Mass, Miller & Josephson * * * in the order entered July 21, 1971 are conclusive as to all sums of money owed to such attorneys by any party in interest in this cause, including fees and costs * * *."

On its face, this language of the order could be construed as dispositive of the issue of the total amount of attorneys' fees owed petitioner by defendant. But, considering that the order is a response to a request for instructions by the trustee appointed under the provisions of the 5 May decree as to how to properly effectuate that decree, which decree did no more than set the amount of attorneys' fees to be made available from the trust fund, it is clear that this order can purport to do no more than to so instruct the trustee. This is sustained by language further on in the order where the trial judge states: "* * * all claims of all other parties *to the trust fund* are barred and are deemed to be full paid, including all clients of Mass and Miller * * *." (Emphasis ours.) These two provisions of this order, considered together and in light of the prior decree and orders entered in this case, demonstrate that the trial judge was only reiterating his rulings of 5 May and 21 July, limiting the amount of attorneys' fees to be made available from the proceeds of the sale of the Roscoe Street property. And this can be the only reasonable interpretation. The trust was to be for the benefit, care, and use of the elderly plaintiff, and its res was to come from the proceeds of the sale of the Roscoe Street property. Actual total attorneys' fees might well

have been great enough to defeat the purpose of the trust. Therefore, the trial judge reasonably set a limit on the amount of the attorneys' fees to be made available from the sale of the property.

■■ Accordingly, we hold that the trial judge's decree of 5 May 1971 and his orders of 21 July and 4 August 1971 were *res judicata* only as to the amount of attorneys' fees available from the proceeds of the sale of the Roscoe Street property. See *National Bank of Albany Park in Chicago v. Newberg, supra,* at page 686, footnote 3.

■■ The trial judge's order of 24 September 1971 denying without a hearing petitioner's petition of 3 September 1971 (wherein petitioner alleged an oral contract with defendant relating to attorneys' fees in this case and asked the court to vacate so much of the 4 August and 15 July orders as purported to be determinative of the total amount of attorneys' fees due him from defendant in this case) in no way reflects on the allegations contained in the petition, since there was no reason given for the denial, and since the petition itself was basically only a request for clarification, not for a determination on the merits. Even if the petition of 3 September 1971 could reasonably be construed (which we think it could not be) as tendering issues as to that alleged contract to the Equity Court for final disposition, thereby invoking the exercise of the jurisdiction of the court, the record nowhere discloses any exercise of such jurisdiction; there was no hearing on, or findings as to, any such issues. Petitioner is, therefore, free to pursue an action at law based on any alleged contract he may have had with defendant for attorneys' fees in connection with this case. Any judgment he may receive must, of course, be reduced by the amount ($1,900.00) he received under the order of 15 July 1971, as well as by the payments of $600 and of $500 which he has already received.

For the foregoing reasons, the order of 24 September 1971 is reversed and the cause is remanded to the trial court with directions to grant the petition of 3 September 1971.

Order reversed and cause remanded with directions.

STAMOS and LEIGHTON, JJ., concur.