NATIONAL TEA CO., Plaintiff-Appellee, v. 4600 CLUB, INC., Defendant-Appellant.

(No. 61686;

First District (5th Division)—October 10, 1975.

*Rehearing denied January 9, 1976.*

Philip S. Makin, of Chicago (Schiller & Schiller and John T. Martoccio, of counsel), for appellant.

Kenneth J. Wysoglad and William K. Dwyer, both of Rosemont, for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff brought this action under the forcible entry and detainer statute (Ill. Rev. Stat. 1973, ch. 57, par. 1 *et seq.*) to obtain possession of commercial premises it leased to defendant. The trial court, sitting without a jury, found that plaintiff was entitled to possession of the premises and on December 18, 1974, entered an order for possession in favor of plaintiff and approved a bond to serve as payment for use and occupancy. Defendant contends that the trial court erred in (1) failing to find that plaintiff was estopped from asserting a right to possession of the premises and (2) failing to find that plaintiff's termination of the lease was in bad faith and contrary to the terms of the lease.

On June 30, 1970, plaintiff, lessor, entered into a written sublease agreement with defendant, lessee, of a single-story commercial building, 30 feet wide and 100 feet long, located at 4600 North Clark Street in Chicago. The lease was to commence on July 1, 1970, and was to expire on June 30, 1973. The sublease agreement consisted of a printed form and a typewritten rider. Paragraph 25 of the rider provided:

> "Anything in this lease to the contrary notwithstanding; Lessor shall have the right and privilege of terminating this lease at any time prior to the stated expiration of this sublease, or any extended expiration date, provided and on condition that the Lessor herein mails to Lessee herein at 4600 N. Clark St., Chicago, Ill., at least six months' written notice of its election to terminate the lease; it being understood that such termination shall be only for the purpose of Lessor taking over the premises herein for its own use or for the enlargement of Lessor's supermarket and/or the parking lot."

On April 23, 1973, plaintiff and defendant entered an "Amendment of Lease," consisting in its entirety of two provisions, which stated:

"(1) The term of the lease is hereby extended for a period of three years beginning on July 1, 1973 and ending June 30, 1976.

(2) It is expressly understood and agreed that this Amendment of Lease between the parties hereto is intended to amend and modify the lease dated June 30, 1970 only to the extent above set forth and that all other terms and conditions of said lease (including Article 25 by which Lessor has right to terminate lease upon six months' notice), as hereby amended and modified, are hereby ratified and confirmed."

On April 4, 1974, plaintiff sent written notice to defendant of its election to terminate the Sublease as of October 31, 1974, "for the purpose of making that space available for the enlargement of the parking lot."

On November 13, 1974, plaintiff filed an action seeking possession of the premises occupied by defendant. Defendant filed an answer to the complaint in the form of a general denial.

At trial defense counsel, in his opening remarks to the court, stated that defendant did not raise any defenses to plaintiff's notice of termination, that defendant did not have a defense to a judgment in plaintiff's favor, that defendant was diligently looking for another location for its business, that defendant was merely asking the court to stay the writ of restitution for a reasonable time and that if the court granted a short stay of the writ of restitution, defendant would file a notice of appeal.

The evidence reveals that defendant is engaged in the retail liquor business. Plaintiff operates a supermarket in the same block as defendant's store. Located between the building occupied by defendant and plaintiff's supermarket is a parking lot with a capacity of 200 cars open for the convenience of plaintiff's customers.

The April 23, 1973, "Amendment of Lease," which specifically incorporates the termination provisions of paragraph 25 of the rider to the original lease, was entered into following negotiations between the parties. Following receipt of the April 4, 1974, notice of termination, defendant informed plaintiff's representatives that it was having difficulty finding a new location for its business. Plaintiff replied that the notice of termination would not be changed. An attorney employed in plaintiff's real estate department testified that plaintiff, in the past, had "extended every consideration" to defendant with regard to lease extensions. Defendant also introduced evidence demonstrating that the space occupied by the subject premises would add only a few spaces to plaintiff's parking lot.

In closing argument defense counsel reiterated his request that the

court stay the issuance of the writ of restitution for 12 months in order to allow defendant sufficient time to relocate its business.

The court, in issuing its December 18, 1974, order in plaintiff's favor, stayed the writ of restitution to January 31, 1975, to enable defendant to remain in operation through the holiday season.

OPINION

Defendant's basic contention appears to be that the judgment of the trial court was against the manifest weight of the evidence. Defendant initially argues that it proved plaintiff was estopped from asserting its claim to immediate possession of the leased premises.

■■ In order to invoke the principle of estoppel, six elements must appear:

> "(1) Words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him; (4) the party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel or by the public generally; (5) the representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel; and (6) the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof." (*Lowenberg v. Booth*, 330 Ill. 548, 555-556, 162 N.E. 191.)

The party who asserts the existence of the estoppel "has the burden of proving it, and the proof must be clear, precise and unequivocal." *Jennings v. Bituminous Casualty Corp.*, 47 Ill.App.2d 243, 249, 197 N.E.2d 513; *Allstate Insurance Co. v. National Tea Co.*, 25 Ill.App.3d 449, 323 N.E.2d 521.

Applying these principles to the instant case, it is clear that defendant's contention is utterly without merit. The record discloses no showing whatsoever by defendant that plaintiff, by words or conduct, misrepresented or concealed material facts regarding its determination to terminate defendant's lease. Although defendant argued before the trial court, and renews his argument before us, that plaintiff had issued notices of termination on several occasions prior to April 4, 1974, only

 

to agree to continued tenancy of the premises by defendant, the evidence it relies upon does not support this assertion. No prior notice of termination was introduced into evidence. Defendant, at oral argument, has pointed to the testimony of the attorney employed by plaintiff's real estate department as supportive of its contention that plaintiff was estopped from terminating the lease. We believe, however, that this testimony merely reflected a general effort by plaintiff to treat defendant with fairness. We, therefore, hold that the trial court did not err in failing to find plaintiff estopped from asserting its right to possession of the leased premises.

Finally, defendant contends that the termination of the lease by plaintiff was not in good faith. Defendant argues that although plaintiff, as grounds for terminating the lease expressed its desire to expand its parking lot, uncontroverted evidence indicated that the utilization of the subject property for this purpose would add only a very small number of parking places to the lot. Defendant points to this as evidence of plaintiff's bad faith.

██ This argument ignores the fact that paragraph 25 of the rider to the lease, specifically referred to in the 1973 "Amendment to Lease," states that plaintiff could terminate the lease "* * * for the purpose of Lessor taking over the premises herein for its own use or *for the enlargement of lessor's supermarket and/or the parking lot."* (Emphasis supplied.) This right to terminate the lease was not predicated on the amount of space which could be added to plaintiff's lot. It was an absolute right of early termination vested in plaintiff, unequivocal and unambiguous in its terms. Plaintiff's actions in terminating the lease in order to secure more area for its parking lot was thus clearly mandated by the lease instrument agreed to by defendant. Plaintiff did not act in bad faith in terminating the lease.

For the foregoing reasons the judgment is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.