D. C. ANDERSON *et al.*, Plaintiffs-Appellants, *v.* BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 526, Defendant-Appellee.

Fourth District    No. 14619

Opinion filed February 7, 1978.

Drach, Terrell and Deffenbaugh, P. C., of Springfield, for appellants.

Ensel, Jones, Blanchard & LaBarre, of Springfield (Alfred B. LaBarre, of counsel), for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs were teachers and counsellors employed by defendant Lincoln Land Community College. Early in the year 1976, the vice

president for academic affairs, Dr. Schultz, requested department heads of the college to ascertain who would be interested in teaching summer school during the summer of that year. The various department heads proceeded with the inquiry, and, during the spring months, a list of persons willing to teach summer school was prepared. Plaintiffs were included on the list.

For several years prior to 1976, going back at least to 1971, the defendant Board had a policy on pay for teaching the summer session. Basically it provided for multiplying one-half of the average weekly contract hours by one-thirtieth of annual basic salary. On May 8, 1976, the policy was changed to provide for a flat rate per contract hour; this would yield a lesser figure than under the former policy. On May 19, 1976, the defendant Board approved the list prepared by Dr. Schultz as the teaching faculty for the summer session.

Plaintiffs filed suit alleging breach of an oral contract, *i.e.*, compensation at the former rate; they further alleged that the defendant Board was estopped from changing its policy just prior to the commencement of the summer term when it was too late for plaintiffs to seek other employment. Both sides moved for summary judgment supported by affidavit. The trial court held in favor of defendant and entered summary judgment for it. This appeal followed.

If any oral contract to teach at the old rate were to arise, it must necessarily emanate from the discussions with Dr. Schultz. Language found in one of plaintiffs' affidavits is characteristic of this theory—"That in all discussions between Dr. Schultz and the Department Chairmen and myself and members of my department, it was agreed that persons teaching summer school during the 1976 summer session would be paid in accordance with this (*i.e.*, former) policy."

Apart from the conclusory nature of the affidavits in this respect, there is no showing that Dr. Schultz was empowered to bind the defendant Board. Moreover, it is extremely dubious whether the Board could legally delegate any such power. *Elder v. Board of Education* (1965), 60 Ill. App. 2d 56, 208 N.E.2d 423, held that discretionary power, such as the right to appoint teachers, could not be delegated or limited by contract. Similarly, in *Muehle v. School District No. 38* (1951), 344 Ill. App. 365, 100 N.E.2d 805, the board directed the superintendent to hire a teacher but took no official action itself. The court held the hiring invalid as a nondelegable function of the board. *Elder* and *Muehle* are common school cases, but no reason exists to differentiate community college cases. Indeed, the supreme court so held in *Board of Trustees v. Cook County College Teachers Union* (1976), 62 Ill. 2d 470, 343 N.E.2d 473.

■■ We hold that Schultz had no power to bind the defendant Board and at most his actions were of a preliminary nature, subject at all times

and in all respects to final approval or disapproval by the defendant Board.

■■ Plaintiffs next claim that the Board is estopped to disavow Schultz's actions. Estoppel has been allowed against the State, but only under extraordinary circumstances. Both sides have cited to us *Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 230 N.E.2d 465. That case makes clear that positive actions by the body to be estopped must appear and that each case will be decided under its own facts and circumstances. *People ex rel. Scott v. Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 306 N.E.2d 7, states the rule that extraordinary circumstances must exist.

■■ In the case at bar, there is no showing that the defendant Board did anything concerning the summer term until the resolutions of May 8 and May 19 were passed. It is factually inapposite to *Stahelin* where it was shown that the board was aware at all times of the actions of the contractor and specifically directed him to deal exclusively with their architect-agent. Furthermore, it was not just a general awareness of what was taking place (*i.e.*, erection of the building), but it was specific in detail as to the extras and credits. In the instant case it can be inferred that the defendant Board probably had a general intent to hold a summer session, but no specifics appear until May 8.

Nor do we perceive any extraordinary circumstances. Summer session had been a routine matter for five years prior to the incidents in question. To say that scheduling of classes, assignment of personnel and fixing of compensation are extraordinary functions of a school system of any variety is to do violence to language. We would characterize such functions as customary and habitual.

The decision of the circuit court was correct and it is affirmed.

Affirmed.

GREEN, P. J., and CRAVEN, J., concur.