THOMAS J. SCANLON *et al.*, Plaintiffs-Appellees, *v.* E. EARL FAITZ, Building Comm'r of Village of Oak Lawn, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 76-1152

Opinion filed February 15, 1978.

Joseph J. Kozlowski and John A. Smith, both of Chicago (Kozlowski & Smith, of counsel), for appellants.

Davis, Dietch & Ryan, of Chicago (Paul E. Peldyak, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

At issue is whether the trial court erred in issuing a writ of mandamus allowing the plaintiffs to construct residences when the building permits on which the plaintiffs relied were improperly issued by a municipal building commissioner.

The plaintiffs, Thomas Scanlon and James Hughes, build homes. When this suit was filed, defendant E. Karl Faitz was the director of building and zoning for the Village of Oak Lawn (the Village), his codefendant.

The plaintiffs contracted to purchase eight lots in the Village conditioned upon their being able to obtain building permits for construction of two residences on three of the eight lots. These three lots, which are the subject of this action, are 25-foot contiguous lots of record on which the plaintiffs want to build two single-family homes. The lots were purchased after the plaintiffs were issued Village building permits authorizing that construction, and they are the only vacant parcel in the residential neighborhood where they are located, at 5301 West 89th Street in Oak Lawn. No other 37½-foot lots exist in the immediate area surrounding the subject property. The properties along both sides of the street were improved with either 50-, 66- or 75-foot combinations of existing substandard lots similar to the plaintiffs'. Directly adjacent to the plaintiffs' property was a residence built on three 25-foot lots, and

diagonally across the street another home also was built on three 25-foot lots. All the other homes in the area of the plaintiffs' property were developed on 50-foot lots.

In 1971 the Village board of appeals, acting on a petition from a prior owner of the subject property, recommended to the Village board of trustees a variation from the minimum frontage and lot area requirements of the Village zoning ordinance. This variation would have permitted construction of residences on two 37½-foot lots into which the owners proposed to divide their three 25-foot lots. The variation was requested because the then owner stated he was unable to obtain additional land from either side of the lot, and felt the cost of the three lots would prohibit him from building only one residence on them.

On June 15, 1971, the board of trustees adopted a motion to follow the recommendation of the board of appeals and grant the variation, but no ordinance providing for and approving this variation was presented to or adopted by the board of trustees. The Illinois Municipal Code requires a municipality such as the Village to exercise its power to determine and approve variations only by adopting an ordinance after a public hearing before the board of appeals, if this power is reserved to the corporate authorities of the municipality. (Ill. Rev. Stat. 1971, ch. 24, pars. 11—13—4, 11—13—5, 11—13—6.) In the case of the Village, the board of trustees retains the power to grant or prohibit variations.

On June 14, 1973, the plaintiffs submitted applications for two building permits on 37½-foot lots. The permits applied for were issued by Faitz and paid for by the plaintiffs on July 24, 1973. When, immediately after the issuance of the building permits, the plaintiffs began to excavate the property, property owners in the area objected to the construction of homes on 37½-foot lots and circulated petitions for signatures opposing the construction of homes on lots which did not have at least 50-foot frontages. Subsequently, a number of area residents appeared at a hearing before the Village planning and development commission to express their objections. On August 13, 1973, after the plaintiffs had dug two excavations and ordered building materials, village authorities orally ordered the plaintiffs to halt construction and to the fence the property. The plaintiffs complied with these orders. On August 14, 1973, the president and board of trustees referred the matter to the planning and development commission, which subsequently voted to deny the variation and ordered the plaintiffs to stop their excavations and fence the property.

On October 4, 1973, the plaintiffs filed a petition for a writ of mandamus, directing the defendants to allow them to build two single-family homes on their 75-foot parcel. After an evidentiary hearing, the circuit court entered an order on January 24, 1974, directing the Village to

allow the plaintiffs to proceed with their construction. Included in the order were findings that the Village board of trustees granted a variation to build two homes on the land in question; the plaintiffs bought the property and applied for and received building permits after paying the requested amount; the Village withdrew the permits after the plaintiff excavated the property for two buildings; and because the plaintiffs relied on the Village's officers' conduct, the Village was estopped from denying that conduct.

The defendants appealed and this court vacated the mandamus order and remanded the cause for a full hearing because of a lack of evidence. (*Scanlon v. Faitz* (1975), 27 Ill. App. 3d 1072, 328 N.E.2d 40.) Following a hearing at which Faitz, one of the plaintiffs, and the prior owner of the property testified and exhibits were received in evidence, the circuit court entered an order repeating its initial findings, and again ordering a writ of mandamus allowing the plaintiffs to build.

On appeal, Faitz and the Village contend that because the evidence shows neither that there was a substantial change of position by the plaintiffs, nor that the plaintiffs had a clear legal right to the permits, the Village is not estopped from revoking the building permits it issued erroneously. In response, the plaintiffs argue that because they relied on affirmative acts of the Village's building department in purchasing and improving the property, and will suffer a substantial financial loss consisting of the purchase price of the lots, the cost of excavation and building materials and the fees for building permits unless they are permitted to construct two single-family residences on the property, the circuit court was correct in ruling that the Village was estopped from interfering with the construction.

A determining consideration in this case is that the Village ordinances require subdividers to obtain the approval of the Village planning and development commission and the board of trustees for their final plat of subdivision, and then submit that plat to the county recorder. The ordinances also require that the final plat be acceptable for recording by the county recorder, and that every application for a building permit be accompanied by a certified copy of a recorded plat of the lot for which the permit is requested. Here, the plaintiffs were "subdividers" as that word is defined in the ordinances. Thus, only after a plat dividing the three 25-foot lots into two 37½-foot lots had been approved by the planning and development commission and the board of trustees, and then accepted for recording, could a building permit properly have been issued. Until then the plaintiffs could not legitimately have begun construction.

The record here fails to show that the required plat was properly approved and recorded. On March 27, 1972, the Village manager

circulated a memorandum emphasizing a decision by the board of trustees to adhere strictly to the plat requirement of the Village ordinance. His memorandum was directed to the planning and development commission, the board of appeals, the Village engineering department and the Village building department. Faitz testified at the hearing following this court's remand to the circuit court that he knew in April 1972, that this policy had been formulated. Thus, an error clearly was committed when Faitz issued the building permits on July 24, 1973. In issuing these permits without requiring the necessary prior step of approval and recording of a final plat for a subdivision of the parcel into two 37½-foot lots, Faitz exceeded his authority as a Village official.

■■ Faitz also exceeded his authority in issuing the building permits for a second reason. Although, as pointed out above, the board of trustees, by motion, approved the variation recommended by the board of appeals, it never adopted the ordinance required by the Illinois Municipal Code to give substance to that variation. Because the board of trustees never completed the statutorily required procedure to adopt a variation, there was no legal authorization for building on these lots with 37½-foot frontages. Thus, the building permits were not lawfully issued. The motion which the board of trustees adopted was no more than a declaration of intent; without a subsequent adoption of an ordinance, no variation existed to provide a basis for issuing building permits for construction on 37½-foot lots. (*Village of Gulfport v. Buettner* (1969), 114 Ill. App. 2d 1, 9, 251 N.E.2d 905.) Even though, as Faitz admitted, the Village in many instances followed the incorrect procedure of issuing building permits when no ordinance determining and approving a variation had been passed, that such an incorrect procedure was followed on many occasions does not make the improper actions of Village officials any more proper. An error is no less an error because it is committed frequently, and while repetition may cause a mistake to be regarded as a tradition, it does not cure the mistake. In the absence of the passage of a variation ordinance by the board of trustees, the issuance of the building permits to the plaintiffs was a nullity which conferred no rights on the plaintiffs.

■■ The general rule applicable here is that a municipality cannot be estopped by an act of its agent which exceeds the authority conferred on him; anyone who deals with a governmental body does so at his own peril if he fails to accurately ascertain that one who purports to act for the municipality stays within the bounds of his authority. This is true even though the municipal agent himself may be unaware of the limits to his authority and inadvertently exceeds them. And, in matters involving public rights, the courts do not interpose to hold the municipality estopped, except under special circumstances which would make it

highly inequitable or oppressive to enforce those public rights. *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 160-61, 171 N.E.2d 605; *Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 1002, 350 N.E.2d 17.

Here, an agent of the Village exceeded his authority in issuing the building permits to the plaintiffs. Yet, as observed in *Cities Service Oil Co.*, at 160-61, the responsibility for ascertaining this error properly rested with the plaintiffs. If the plaintiffs relying upon Faitz's action in issuing the building permits, neglected to ensure that he was acting within the limits of his authority before proceeding with their project, they, not the owners of neighboring residences on lots of 50 foot or more wide, should bear the consequences of this error.

When municipal officials determine that permits have been issued erroneously, they have a duty and responsibility to correct the situation by withdrawing or revoking the permits, as was done in this case. Thus, only if special circumstances existed on behalf of the plaintiffs should this court intervene to hold the Village estopped from halting the construction when it discovered the mistake.

We find no proof of special circumstances involving great inequity or oppressiveness to the plaintiffs. Village employees neither intentionally misled plaintiffs, made false representations nor kept material information from the plaintiffs. Although the plaintiffs did purchase the land and pay for an architect's services, the building permits, and excavation and fencing, such expenditures and actions do not amount to a showing that denying the plaintiffs the writ of mandamus they seek would result in great inequity or oppressiveness, when the crucial counterbalancing rights of the people of the Village and the neighborhood where the building is to take place are considered.

■■■ The paramount consideration here is the right of the people who live in the Village—both the broad right of all the people in the Village to the protection of the law which ordains that their elected officials will permit construction only in accordance with specified rules and regulations, and the specific right of the people who live in a particular neighborhood to the assurance that their property values will not fall, or the quality of their lives be diminished because new homes are built on lots which do not conform to the size of those in the area and required by the Village ordinances. The doctrine of estoppel is to be invoked only in rare and unusual circumstances where a public right and the protection of the public is involved, and should not be be applied where it would defeat a policy adopted to protect the public. (*People ex rel. Brown v. State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 104, 286 N.E.2d 524.) This court cannot uphold the action of Village officials here, who through error or oversight authorized the building of the two

homes, as against the Village's subsequent repudiation and the protests of the neighborhood residents. The doctrine of estoppel has developed in the law to enable courts to reach equitable conclusions and to prevent fraud and injustice. (*City of Quincy v. Sturhahn* (1960), 18 Ill. 2d 604, 614, 165 N.E.2d 271.) In this case it would be unfair and inequitable to apply estoppel to protect the plaintiffs because to do so would harm nearby homeowners who were powerless to prevent the illegal issuance of the building permits, while the plaintiffs, by proper inquiry and investigation, could have avoided the unfortunate predicament in which they find themselves.

Mandamus is not a writ of right, but an extraordinary remedy; the party seeking the issuance of the right must show a clear legal right to the relief requested. At most, the plaintiffs' legal right was questionable, and the writ of mandamus should not have been issued. *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 254, 309 N.E.2d 653.

■■ Although the plaintiffs have not sought any alternative relief, because we are holding that the building permits which were issued were a nullity, the plaintiffs are entitled to a refund of the fees paid for those permits. Consequently, this case is reversed, and remanded solely so the circuit court may enter a proper order directing the Village to refund to the plaintiffs the amounts paid to the Village for the invalid building permits.

Judgment reversed and remanded for further proceedings consistent with these directions.

JIGANTI, P. J., and McGILLICUDDY, J., concur.