THE COUNTY OF COOK, Plaintiff-Appellee, *v.* JOSEPH PATKA *et al.,* Defendants-Appellants.

First District (4th Division)   No. 79-1711

Opinion filed June 5, 1980.

6

Bernard B. Kash and Denis P. Dwyer, both of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul B. Biebel, Jr., Morris Alexander, and Marta Forowycz, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

After the defendant's house was ordered demolished as a public nuisance, the court, on the county's request, awarded the county a demolition lien. The defendant appeals contending that (1) the county waived its rights to a lien when the assistant state's attorney announced at trial it would not seek a lien; (2) the county should be estopped by its failure to give notice of its intention to seek a lien until after the house was demolished and the defendant's husband died; (3) no proper notice was given before the lien was awarded. We find no reversible error and affirm.

The original defendants, Joseph and Anna Patka, owned and lived in a house in Stickney Township, Illinois. Because of the condition in which the property was kept, it had become a public and private nuisance. Prior to August 21, 1978, the county of Cook repeatedly attempted to force the defendants to abate the nuisance. On July 20, 1976, a judgment was entered against the defendants ordering them to pay the sum of $2,000 plus costs for failure to comply with a court order to clean up the premises and place them in an environmentally safe condition. Defendants failed to pay the fine. On March 23, 1978, the defendants were again ordered by the court to cease creating a nuisance. It also ordered that the judgment of June 21, 1976, was to stand as a lien on the property.

On August 21, 1978, the county filed a petition for demolition because the defendants failed to abide by the March 23, 1978, decree ordering them to put the property in a sightly and environmentally safe condition. The county alleged in detail how the premises were in an unsafe condition and were unfit for human habitation, and further alleged that the building was not economically repairable. The county therefore prayed that the court authorize the county to demolish the structure and remove the junk and debris on the premises and that the county be partially reimbursed for its expenses and costs by the sale of the salvage realized from the demolition. In the complaint the county offered to provide a grant of up to $5,000 to help the defendants pay for their moving costs and to relocate in habitable quarters. The defendants denied the allegations and demanded proof.

At the trial overwhelming evidence was introduced showing that the property both inside and out was, as alleged, a nuisance and unfit for human habitation. The assistant state's attorney, after summing up the prior history of the litigation, stated that the planning department had

advised him to advise the court that there would be $5,000 available to help the defendants move and that if the court so ordered it would be available within two weeks. All that was needed was a technical approval. He also stated that the county was not asking for a lien with regard to the demolition, but would bear that expense so that the defendants would have the property free and clear.

The court entered a judgment on September 6, 1978, finding the property a menace to public health and safety and authorizing the county to demolish the structure. It also ordered the county to pay the defendants $5,000 to defray their moving expenses as soon as they had moved from the property. At the trial, the judge instructed defense counsel to inform his clients that they were to be out of the building in two or three weeks.

In fact, the defendants did not move as directed, and the case was repeatedly continued at the request of defense counsel. During the lengthy delay, Joseph Patka died. Thereafter on April 30, 1979, the sheriff of Cook County was ordered to remove the remaining defendant, Anna Patka, from the premises. As soon as this had been done, the property was demolished and cleaned up. At a final hearing on May 16, 1979, the court determined that the premises had been cleaned up and made environmentally safe and granted the county a lien for demolition costs. It appears that while notice was given both parties of the status hearing, no specific notice was given the remaining defendant that the county intended to seek a demolition lien.

On June 15, 1979, the defendant moved to vacate the order granting a lien on the grounds that:

    (1) the county at the hearing expressly waived its right to a lien;

    (2) the county should be estopped from asserting a demolition lien because

        (a) the defendant relied on the county's representation to that effect and to allow the demolition lien would greatly reduce the $5,000 that the county had paid the defendants and would prejudice the defendant in that the opportunity to contest the adequacy or inadequacy of the $5,000 relocation expense was no longer available to the defendant;

        (b) the defendants had been compelled to purchase a home in a short interval (in fact they purchased a two-flat) with the intention of applying the proceeds from the sale of the vacant land (free and clear from any demolition lien) toward the mortgage balance of said purchase, and to allow a lien at this late date would greatly diminish the amount of money defendant had expected to receive;

        (c) the county in its petition did not ask for a demolition lien.

(3) since the defendant was unaware of the county's turnabout concerning the demolition lien until May 16, 1979, defendant was taken by surprise and did not have an adequate opportunity to prepare a challenge to the county's right to a lien.

The county in its answer denied the various allegations.

At the hearing defense counsel asserted that the basis for defendant's claim was waiver by the assistant state's attorney when he made the representation in court respecting the lien. Counsel who had represented defendants until after May 16, 1979, testified as to the statements made at the former hearing and stated that he did not learn of the State's intention not to waive that lien until May 16, 1979. Counsel conceded that the motion for demolition was vigorously opposed. He also conceded that his clients did not move from the property as ordered.

The assistant state's attorney explained that when the request for the $5,000 was presented to the county board for approval, the commissioners refused to approve it unless the state's attorney obtained a demolition lien for the costs of demolition which was $2,600. He also stated that the representation that the county would not require a lien was premised on prompt removal and contended that the defendants, because of their refusal to comply with the court order, had not come into court with clean hands. Defense counsel stated he was not contending there was any misrepresentation. He argued instead that the assistant state's attorney had the authority to waive the lien; accordingly the county was bound by his representations, and it was irrelevant that the board said he could not do it.

The court rejected the defendant's arguments and granted the lien.

I.

Section 25.24 of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1977, ch. 34, par. 429.8), provides in part:

"The county board of any county may demolish, repair or cause the demolition or repair of dangerous and unsafe buildings or uncompleted and abandoned buildings within the territory of the county outside any city, village or incorporated town. In any county having adopted, by referendum or otherwise, a county health department as provided by 'An Act in relation to the establishment and maintenance of county and multiple-county public health department', the county board of any such county may demolish, repair or cause the demolition or repair of dangerous and unsafe buildings or uncompleted and abandoned buildings within the territory of any city, village or incorporated town having less than 50,000 population. No building may be boarded up or otherwise enclosed. Such county board shall apply

to the circuit court of the county in which such building is located for an order authorizing such action to be taken with respect to any such building if the owner or owners thereof including the lien holders of record, after at least 15 days' written notice by mail so to do, have failed to commence proceedings to put such building in a safe condition or to demolish it. It is not a defense to such cause of action that the building is boarded up or otherwise enclosed nor shall the court order such building boarded up or otherwise enclosed. * * * The hearing upon such application to the circuit court shall be expedited by the court and given precedence over all other suits. The cost of such demolition or repair incurred by the county board or by a lien holder of record is recoverable from the owner or owners of such real estate and is a lien thereon, which lien is superior to all prior existing liens and encumbrances, except taxes: provided that within 60 days after such repair or demolition · the county board or the lien holder of record who incurred such costs and expenses shall file notice of lien of such cost and expense incurred in the office of the recorder of deeds in the county in which the real estate is located or in the office of the registrar of titles of such county if the real estate is registered under 'An Act concerning land titles,' approved May 1, 1897, as amended. The notice must consist of a sworn statement setting out (1) a description of the real estate sufficient for identification thereof, (2) the amount of money representing the cost and expense incurred, and (3) the date or dates when the cost and expense was incurred by the county or by the lien holder of record. Upon payment of the cost and expense by the owner of or persons interested in the property after notice of lien has been filed, the lien shall be released by the county or person in whose names the lien has been filed and the release may be filed of record as in the case of filing notice of lien. The lien may be enforced by proceedings to foreclose as in case of mortgages or mechanics' liens. Suit to foreclose this lien must be commenced within 3 years after the date of filing notice of lien."

Furthermore, Cook County Building Ordinance, article V, section 5.4—3g provides:

"If any building shall be found to be in a dangerous and unsafe condition or uncompleted and abandoned, the Building Commissioner shall notify in writing the owner or owners thereof, directing said owner or owners to put such building in a safe condition or to demolish it. Where, upon diligent search, the identity or whereabouts of the owner or owners of any such building shall not be ascertainable such notice shall be mailed to

the person or persons in whose name such real estate was last assessed. If, after 30 days subsequent to the giving of such notice, said owner or owners fail to put such building in a safe condition or to demolish it, the Building Commissioner shall notify the State's Attorney and recommend initiation proceedings in accordance with this Section. Upon receipt of such notification and recommendation, the State's Attorney is hereby authorized to apply to the Circuit Court of Cook County, or any court of competent jurisdiction for an order authorizing the County to demolish, repair, or enclose or to cause the demolition, repair, or enclosure of said building, and further, to request the court to enter a judgment in favor of the County of Cook for any expenses incurred in the demolition, repair, or enclosure of the building or structure."

It is clear therefore that the county was entitled to a demolition lien unless the defendant is correct in her contention that the county waived or is estopped from now seeking one.

## II.

The defendant's contention that the assistant state's attorney was authorized to waive the lien and that, accordingly, the county is bound by the waiver is without merit.

■■■ While it is true, as defendant contends, that an attorney authorized to represent his client in a lawsuit has the authority to make stipulations, it is not true, as defense counsel seems to assume, that his general authority extends so far as to permit him to waive the rights of his client. To the contrary, it is firmly established in Illinois that an attorney employed to represent his client in litigation has no authority to compromise, to consent to a judgment against his client, or to give up or waive any right of his client without the express consent or authorization of that client (*Village of Dolton v. S. Ellen Dolton Estate* (1928), 331 Ill. 88, 162 N.E. 214; *Lyman v. Kaul* (1916), 275 Ill. 11, 113 N.E. 944; *Chiappetti v. Knapp* (1974), 20 Ill. App. 3d 538, 314 N.E.2d 489; *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 292 N.E.2d 154; *Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 186 N.E.2d 72, *appeal denied* (1963), 25 Ill. 2d 623; *Noel State Bank v. Blakely Real Estate Improvement Corp.* (1944), 321 Ill. App. 594, 53 N.E.2d 621, *appeal denied*; *Town of Hutton v. Ingram* (1929), 255 Ill. App. 97), particularly a legal right guaranteed by law (*Lyman v. Kaul* (1916), 275 Ill. 11, 113 N.E. 944). This is true even where the waiver is sought against a private citizen, not a State or municipal body. (*Lyman v. Kaul* (1916), 275 Ill. 11, 113 N.E. 944; *Chiappetti v. Knapp* (1974), 20 Ill. App. 3d 538, 314 N.E.2d 489; *City of Des Plaines v. Scientific Machinery*

*Movers, Inc.* (1972), 9 Ill. App. 3d 438, 292 N.E.2d 154; *Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 186 N.E.2d 72, *appeal denied* (1963), 25 Ill. 2d 623; *Noel State Bank v. Blakely Real Estate Improvement Corp.* (1944), 321 Ill. App. 594, 53 N.E.2d 621, *appeal denied.*) But the rule is especially applicable when a person seeks to establish a waiver against a municipal body since estoppel against public bodies is not favored (*Monarch Gas Co. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 892, 366 N.E.2d 945, *appeal denied* (1977), 66 Ill. 2d 639), and a governmental body cannot be estopped by an act of its agent which exceeds the authority conferred on him (*Scanlon v. Faitz* (1978), 57 Ill. App. 3d 649, 373 N.E.2d 614, *affirmed* (1979), 75 Ill. 2d 472, 389 N.E.2d 571; *Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17). Anyone dealing with a governmental body takes the risk of accurately ascertaining that he who purports to act for that body stays within the bounds of his authority, and this is so even though the agent himself may have been unaware of the limitations on his authority. *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605; *Scanlon v. Faitz* (1978), 57 Ill. App. 3d 649, 373 N.E.2d 614, *affirmed* (1979), 75 Ill. 2d 472, 389 N.E.2d 571; *People ex rel. American National Bank & Trust Co. v. Smith* (1969), 110 Ill. App. 2d 354, 249 N.E.2d 232.

### III.

■■ The defendant's second contention is that the county should be estopped from enforcing its right to a lien because of its delay in informing defendants of its intent to seek one.

Estoppel against the public is little favored (*Monarch Gas Co. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 892, 366 N.E.2d 945, *appeal denied* (1977), 66 Ill. 2d 639; *People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 286 N.E.2d 524, *appeal denied* (1972), 52 Ill. 2d 599), and is found only in rare and unusual circumstances (*People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 286 N.E.2d 524, *appeal denied* (1972), 52 Ill. 2d 599). Where governmental activities are concerned, the doctrine cannot be invoked except in extraordinary circumstances (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 306 N.E.2d 7; *Premier Electrical Construction Co. v. Board of Education* (1979), 70 Ill. App. 3d 866, 388 N.E.2d 1088; *Anderson v. Board of Trustees* (1978), 56 Ill. App. 3d 937, 372 N.E.2d 718; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380), especially where, as here, public revenues are involved (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 306 N.E.2d 7).

Indeed, public policy generally opposes the application of an estoppel against a governmental body where public revenues are involved even where detrimental reliance is present. (*Mr. Car Wash, Inc. v. Department of Revenue* (1975), 27 Ill. App. 3d 931, 327 N.E.2d 88.) The paramount consideration is the right of the people, and estoppel will not be applied to defeat a policy adopted to protect the public. *Premier Electrical Construction Co. v. Board of Education* (1979), 70 Ill. App. 3d 866, 388 N.E.2d 1088; *Scanlon v. Faitz* (1978), 57 Ill. App. 3d 649, 373 N.E.2d 614, *affirmed* (1979), 75 Ill. 2d 472, 389 N.E.2d 571.

■▮■ Before an estoppel against a public body can be found, it must be shown that (1) there occurred an affirmative act on the part of the municipality and that (2) the affirmative act induced substantial reliance thereon by the litigant and induced the complained-of action. (*Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380.) The affirmative act which induces the reliance must be the act of the governmental body itself, such as legislation by the county board rather than the unauthorized act of a ministerial officer or a ministerial misinterpretation. (*Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17; *People ex rel. American National Bank & Trust Co. v. Smith* (1969), 110 Ill. App. 2d 354, 249 N.E.2d 232.) Accordingly the act of the assistant state's attorney in announcing that the county did not intend to seek a lien, while a positive act, cannot be deemed the positive act of the municipality itself since, as we have already held, that act was beyond the scope of his authority. *Lake Shore Riding Academy, Inc. v. Daley* (1976), 328 Ill. App. 3d 1000, 350 N.E.2d 17.

■■ The defendant contends that the county should be estopped because of its failure to give notice of its intention to claim a lien prior to the actual demolition of the house. But this failure is only nonaction, not a positive act, and mere nonaction is not sufficient to work an estoppel. (*Trustees of Schools v. Village of Cahokia* (1934), 357 Ill. 538, 192 N.E. 565; *Monarch Gas Co. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 892, 366 N.E.2d 945, *appeal denied* (1977), 66 Ill. 2d 639; *G & S Mortgage & Investment Corp. v. City of Evanston* (1970), 130 Ill. App. 2d 370, 264 N.E.2d 740.) As the latter case stated at 130 Ill. App. 2d 375, 375-76, 264 N.E.2d 744:

"In Logan County Board of Sup'rs v. City of Lincoln, 81 Ill. 156, 159 (written in 1876), the Supreme Court said: 'It would be a pernicious doctrine to establish that public rights of municipalities could be cut off by the neglect of the appointed officers for an unreasonable time to enforce them.' The opinion further stated

that 'mere nonaction of its (a municipality's) officers is not sufficient to work an estoppel as against a municipal corporation.' This is still true."

But even if a positive act of the county were found, the defendant has still failed to show that either she or her husband acted in reliance on the act. The defendant argues if they had been informed prior to the actual demolition of the county's intention to seek a lien, they could have filed a section 72 petition to have the demolition stayed, alleging that the decree was predicated upon the county bearing the demolition expense, and thus should have been vacated when the county requested a lien. First, there is nothing in the record to support the defendant's claim that the judgment was predicated upon the waiver of a lien. The judgment was not a consent order, but was one entered after evidence upon a finding that the property was a nuisance as alleged. Second, the trial court could not properly have vacated the order since the evidence clearly showed that the county was entitled to the demolition decree. Third, if the defendant is in fact contending that, despite the clear language of the statute providing for a lien upon demolition, without *exception*, the court could have refused to grant a lien, the argument could equally well have been made after the demolition as before. It was not.

The defendant's second contention is that because of the delay, Mrs. Patka is effectively thwarted from raising the issue of estoppel by the death of her husband, since it was her husband who presumably possessed knowledge concerning the reliance element. Estoppel is based on proof, not speculation, and it is the one claiming estoppel who has the burden of proof. (*Monarch Gas Co. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 892, 366 N.E.2d 945, *appeal denied* (1977), 66 Ill. 2d 639; *City of Chicago v. Nielsen* (1976), 38 Ill. App. 3d 941, 349 N.E.2d 532; *National Tea Co. v. 4600 Club, Inc.* (1975), 33 Ill. App. 3d 1000, 339 N.E.2d 515, *appeal denied* (1976), 62 Ill. 2d 590.) The defendant has produced no evidence showing how either she or her husband acted in reliance on their belief no lien would be claimed, nor indeed has the defendant even suggested what evidence her husband could have produced were he still alive.

## IV.

■■ The defendant's third contention is that while section 34 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 34) provides that the prayer for relief in a complaint does not limit the relief obtainable, it was unfair to allow the county to seek a lien without giving prior notice to the defendant. We are inclined to agree that prior notice should have been given and that the trial court erred in allowing the motion to be argued on May 16, 1979, without such prior notice since the defendant was taken by

surprise. However, before this court will reverse, prejudice must be shown. (*Herman v. Hamblet* (1980), 81 Ill. App. 3d 1050, 401 N.E.2d 973; *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628; *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770; *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 388 N.E.2d 943.) No prejudice is shown here where on July 21, 1979, over one month after the filing of her motion to vacate, the defendant had a full hearing on the issue of whether the county was entitled to a lien.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

LINN, P. J., and JIGANTI, J., concur.