MARCIA KRUSE, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellees.

Third District   No. 3—91—0603

Opinion filed July 1, 1992.

Gerald Brask, Jr., of Prairie State Legal Services, Inc., of Rockford, and Prairie State Legal Services, Inc., of Rock Island (Carol Pentuic, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Dora L. McNew, Assistant Attorney General, of Rockford, of counsel), for appellees.

JUSTICE HAASE delivered the opinion of the court:

The plaintiff, Marcia Kruse, began receiving public aid benefits in 1984. In 1989, the defendant, the Illinois Department of Public Aid (IDPA), terminated her assistance and issued a notice stating that it had overpaid her $8,913. The plaintiff subsequently filed a claim for administrative review. On review, the IDPA reduced the overpayment amount to $2,019. The circuit court of Rock Island County affirmed that decision. The plaintiff appeals.

The record shows that the plaintiff began receiving an Aid to Families with Dependent Children (AFDC) grant in 1984. At the time that the plaintiff applied for assistance, she indicated on her application that she had two small life insurance policies. The IDPA determined annually that the plaintiff was financially eligible for aid from 1984 through 1989. Each of those years, the IDPA conducted a recertification procedure as required by its policy. The plaintiff always provided the IDPA with all the necessary information it needed to make a proper eligibility determination.

In September 1989, an IDPA caseworker discovered that the agency had been erroneously calculating the cash value of the plaintiff's insurance policies. The policies were valued at $3,019.29, which exceeded the defendant's maximum asset level of $1,000. Apparently, all the previous IDPA caseworkers in charge of the plaintiff's file used the wrong tables to calculate the value of the policies. Given that the plaintiff's assets exceeded the maximum amount allowable to qualify for assistance, the IDPA terminated her aid and issued a notice of overpayment totaling $8,913. The overpayment was calculated from

September 1986 through October 1989, which covered 38 monthly benefit checks.

The plaintiff testified at the administrative hearing that if she had been advised correctly about her eligibility in 1986, she would have cashed in her insurance policies. She noted that in 1986 she had exceeded the asset limit for that year by only $201. Thus, she could have easily remedied any eligibility problems by spending the difference.

On administrative review, the IDPA reduced the overpayment amount to $2,019, finding that the plaintiff was only required to repay the amount that her total assets exceeded the IDPA's $1,000 limit. The IDPA noted that it would recoup the overpayment out of any future public aid checks the plaintiff would receive at a rate of 10% of her monthly benefit.

On appeal, the plaintiff argues that the IDPA should be estopped from collecting the overpayment made to the plaintiff.

■ We agree. Although the application of the estoppel doctrine against the State is little favored, it may be invoked under circumstances where it would be inequitable to permit the State to stultify itself by retracting what its officers had previously done. The doctrine is invoked only to prevent fraud and injustice. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415.) However, before an estoppel against a government agency can be found, it must be shown that an affirmative act occurred on the part of the agency and that the affirmative act of the agency induced substantial reliance by the litigant and the complained-of action by the litigant. See *Schumann v. Kumarich* (1981), 102 Ill. App. 3d 454, 430 N.E.2d 99; *Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17.

Historically, under existing Illinois case law, the affirmative act inducing reliance must be the act of a governmental body itself, rather than the unauthorized act of a ministerial officer or a ministerial miscalculation. (See *Schumann*, 102 Ill. App. 3d 454, 430 N.E.2d 99; *Lake Shore Riding Academy*, 38 Ill. App. 3d 100, 350 N.E.2d 17; *County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 405 N.E.2d 1376.) Defendant, IDPA, argues in this case that there is no act of the governmental body itself involved therein. Rather, the action complained of is a ministerial miscalculation made by a ministerial officer. Defendant cites the general rule that "[a]nyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority, and that this is so even though the agent himself may have been unaware of

the limitations on his authority. (*Federal Crop Insurance Corp. v. Merrill* (1947), 332 U.S. 380, 384, 92 L. Ed. 10, 15, 68 S. Ct. 1, 4.) In matters involving strictly public rights the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights." *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 160-61, 171 N.E.2d 605.

The question then presented to this court is whether there are any circumstances under which an administrative agency such as IDPA can be estopped from enforcing a public right against a private citizen where a ministerial officer of the Department has made a miscalculation which has induced substantial reliance upon the private litigant to the private litigant's detriment. In the instant case, the detriment to the private litigant caused by the agency's miscalculation is substantial. After all, to a public aid recipient the amount of $2,019 is a significant sum. The public right to recoup the overpayment of $2,019 seems to this court to be minimal in the light of the detriment caused to the plaintiff by her reliance on the ministerial actions of the IDPA. Here, the plaintiff provided the IDPA with all the necessary information it needed to make a correct eligibility determination. In terms of annual income, the plaintiff properly qualified for aid. The IDPA erroneously calculated the cash value of two small insurance policies of the plaintiff for a period of five years. Had the calculation been correct, and had the plaintiff been informed as to the correct calculation, the cash value of the plaintiff's insurance policies in 1986 only exceeded the IDPA asset limit by $201. The plaintiff would have merely cashed in her insurance policies, spent the $201 difference, and qualified for public aid.

The clients of the IDPA are, by definition, poor people who are often unsophisticated in matters of government relations. We find that it is fair and equitable for public aid recipients to rely on the calculations and determinations of the officers of the IDPA. We further find that as a matter of the public policy of this State, persons who deal with IDPA should be able to rely on the actions of IDPA's officers and agents. Likewise, we hold that it is unfair, inequitable, and unjust for the IDPA to repeatedly review accurate information provided by a claimant, advise the claimant incorrectly and then sue the public aid recipient for the overpayment which is a result of agency negligence. The burden to supervise the employees of IDPA should rest on IDPA and not on the clients of the agency. It appears from the record in this case that the miscalculations involved may have been made by

several IDPA employees. We hold that IDPA has an affirmative duty to provide adequate supervision for its employees.

In holding that the IDPA is estopped from recouping $2,019 from the plaintiff herein, we express no opinion about other situations where the miscalculation should be obvious to a claimant, or where the overpayment is a result of a single miscalculation. Those situations are not presented here. The fact that the miscalculation in this case occurred over a period of five years is especially significant to the court in our ruling.

We recognize that our decision herein is a departure from existing case law in that the affirmative act of IDPA which we are relying upon to estop them from asserting a claim for recoupment of public monies is the act of a ministerial officer. However, we believe that the public policy in favor of accountability of the IDPA outweighs the minimal benefit to the State of recovering $2,019 from a poor public aid recipient.

Accordingly, the judgment of the circuit court of Rock Island County is reversed.

Reversed.

BARRY, P.J., and McCUSKEY, J., concur.