SPACE STATION 2001, INC., Petitioner-Appellant, *v.* HERMAN H. MOSES, Indiv. and as Director of the Bureau of Licensing, Registration, and Permits, *et al.*, Respondents-Appellees.

First District (3rd Division)   No. 83—412

Opinion filed October 12, 1983.

Marvin J. Rosenblum, of Chicago, for appellant.

Stanley Garber, Corporation Counsel, of Chicago (Jerome A. Siegan and Lynn K. Mitchell, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Space Station 2001, Inc. (Space Station), filed a petition for writ of *mandamus* to compel the defendants, Herman Moses, individually and as director of the Bureau of Licensing, Registration and Permits; the city of Chicago; the Department of Inspectional Services of the city of Chicago; and Jane M. Byrne, mayor of the city of Chicago, to reinstate electric and building permits and to issue a public place of amusement (PPA) license for its property located at 1124-1130 West Rosemont Street in the city of Chicago.

After a trial on the merits, the trial court denied the petition. Space Station appeals. The issues presented for review are (1) whether the trial court properly denied the petition for writ of *mandamus* based on an ordinance prohibiting the establishment of an arcade within 200 feet of a residential area; (2) whether the doctrine of equitable estoppel operates to prevent the city's revocation of the building and electric permits; (3) whether the permit revocations were improperly based on section 43—10 of the Municipal Code of Chicago (Municipal Code); and (4) whether Space Station is entitled to damages.

In July 1982, Space Station leased two adjacent stores at 1124 and 1130 West Rosemont Street in Chicago. The north side of the premises is bounded by an alley, the south by Rosemont Street, and the east by a railroad abutment. A sidewalk abuts the west side of the premises and a 15-foot driveway separates the sidewalk from a parking lot. On September 14, 1982, Space Station filed an application for a PPA license, listing the address of the property as 1124 West Rosemont. Space Station intended to combine the two stores and install an arcade. Section 104.2—9 of the Municipal Code defines an arcade as a place of amusement that includes six or more automatic amusement devices.

In accordance with section 104.2—9.1 of the Municipal Code, James LaPrairie, a Chicago police department license investigator, measured the distance between the leased premises and the nearest residential zone. This section of the Municipal Code prohibits the operation of an arcade within 200 feet of a residential zoning district.

LaPrairie measured 148 feet between the doorway at 1124 West Rosemont and the nearest residential area, and 68 feet between the property line of the premises and the nearest residential area. At the request of Scott Kazan, the president of Space Station, LaPrairie measured 201 feet between the premises' alley doorway and the nearest residential area. Kazan testified that he planned to move the building's entrance to the alley doorway.

The zoning administrator signified his approval of the PPA license application by stamping the application on October 13, 1982. The stamp reads as follows:

"Conforms to Zoning Ordinance. This approval of application for license shall not be held to permit or be an approval of any violation of the provisions of the Chicago Zoning Ordinance."

The following day, Space Station paid the $500 application fee.

The building plans, which listed the address of the premises as 1124 West Rosemont, gave no clear indication of the alleys bordering the property, or of Space Station's intent to move its entrance to the alley door. The plans were approved by the Bureau of Fire Prevention and the Departments of Zoning, Inspectional Services, and Energy and Environmental Protection. Building and electric permits were issued on November 8 and 9, respectively. The workers began to put in 18- to 20-hour days, completing 75% of the remodeling between November 8 and 18, 1982. Kazan testified that the work schedule was so accelerated in order to open the arcade by the Thanksgiving holiday weekend. From the planning stage until November 18, 1982, Space Station spent approximately $25,000. In addition, it purchased 100 video game arcade machines for $300,000.

On November 18, 1982, a building inspector revoked the building and electric permits because of a violation of section 43—10 of the Municipal Code and ordered the men to stop working. The PPA application was disapproved on December 2, 1982, because the proposed arcade was within 200 feet of a residential zone and thus violated section 104.2—9.1 of the Municipal Code.

LaPrairie testified that in taking measurements to determine ordinance compliance for liquor stores, he measures from property line to property line. He has taken measurements for public places of amusement on 10 prior occasions; each time, he measured from doorway to property line. He had never measured from an alley door, except in the present case.

The parties stipulated that in the 10 prior applications for a PPA license for which he had taken measurements, LaPrairie had never taken more than one measurement at a site; that Kazan had asked LaPrairie to take the measurement from the proposed new doorway (alley door) to the property line; and that LaPrairie did not tell Kazan that the PPA license application had been approved. They further stipulated that on September 16, 1982, building inspector James McGreal saw that the inside of the building at 1124 West Rosemont was under construction without a permit and sent a warning notice to the last known owner, Sharp Enterprises.

Alderman David Orr testified that he visited the premises in September 1982, discovered ongoing construction work without a permit, and notified the police, who closed down the site. Alderman Orr entered the premises through the 1130 West Rosemont entrance, the only door open to the public.

The trial court denied the petition for writ of *mandamus*, and this appeal followed.

■■ Space Station contends that the trial court's denial of its petition for writ of *mandamus* was an abuse of discretion and contrary to the manifest weight of the evidence. Before a writ of *mandamus* will issue, the petitioner must show compliance with all valid requirements of any applicable ordinances. *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380.

The applicable ordinance in the instant case is section 104.2—9.1 of the Municipal Code, which provides as follows:

"No person shall operate any arcade in any place within two hundred feet of any church, hospital, building operated exclusively as a grammar or secondary school, or residential zoning district, unless such place was licensed as an arcade before the establishment of the church, hospital, educational institution, or zoning district." (Chicago Municipal Code sec. 104.2—9.1 (1982).)

Space Station maintains that because the alley door, which would be the arcade entrance, is more than 200 feet from the nearest residential area, the ordinance requirement has been satisfied. Space Station reasons that LaPrairie's practice of measuring from public place of amusement entrance to residential zone has established a policy which should be directive here. The defendants contend that since the distance between the property lines of the proposed arcade and the nearest residential area is less than 200 feet, Space Station has violated the ordinance.

■■ The words of a statute should be given their plain, ordinary or commonly accepted meaning, unless to do so would defeat the legislative intent. (*Department of Public Works & Buildings v. Wishnevsky* (1972), 51 Ill. 2d 550, 283 N.E.2d 872.) The plain and ordinary meaning of section 104.2—9.1 of the Municipal Code requires that the minimum distance between an arcade and a residential area be 200 feet. The language of the ordinance indicates that the legislative intent is to keep arcades at least 200 feet away from residential areas. To permit Space Station to circumvent the ordinance purpose by moving its entrance to the alley, while the major part of the arcade is located within 200 feet of a residential area, would not be consist-

ent with the plain wording or the legislative intent of the ordinance. Moreover, there is no merit to the contention that the procedure used by one city employee has established an official city policy on the method of measurement.

In an analogous case, *De Loian v. Illinois Liquor Control Com.* (1969), 109 Ill. App. 2d 71, 248 N.E.2d 689, the statute in question prohibited the issuance of a license for the sale at retail of any alcoholic liquor "within 100 feet of any church ***." (Ill. Rev. Stat. 1965, ch. 43, par. 127.) The appellate court interpreted the statute to mean that the measurement should be taken between the property lines, rather than between the buildings, of the licensee and the church. Similarly, according to our interpretation of section 104.2—9.1, its purpose would best be accomplished by measuring from the property line of the proposed arcade to the property line of the nearest residential area. As that distance is less than 200 feet, Space Station has failed to comply with the requirement of section 104.2—9.1. The trial court properly denied the petition for writ of *mandamus*.

■ Space Station next contends that the city should be estopped from revoking its permits because Space Station relied to its detriment on the issuance thereof. Space Station bases this argument on *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605, where the city issued a building permit and gave a copy of an obsolete zoning ordinance to the plaintiff. The plaintiff started construction of a gas station in a location which complied with the old ordinance but violated the current ordinance. Seven months after the issuance of the permit, the city revoked the permit. Our supreme court ruled that the city was estopped from this action because not only had it induced the plaintiff to believe he was in compliance with the law, but also it had let seven months pass before revoking the permit. Thus, a city can be estopped where the party's action was induced by the conduct of a municipal officer, and the party would suffer substantial loss in the absence of relief. This is an exception to the general rule that a city cannot be estopped by the act of its agent beyond his authority. *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 161.

In the instant case, plaintiff started construction at least two months before the building and electric permits were issued. In addition, the permits were revoked within seven working days of their issuance. Under these facts and circumstances, it is apparent that the conduct of city employees did not induce Space Station to start to construct and to install the arcade. Thus, the first part of the *Cities Service* exception does not apply to the instant case.

As to the second part of the *Cities Service* exception, Space Station has not demonstrated a substantial loss due to its reliance on the issuance of the permits. The trial court determined that Space Station spent $12,000 during the seven working days between issuance and revocation of the permits. Although Kazan testified that the work pace was expedited in order to open for the Thanksgiving holiday weekend, the trial court inferred that Space Station wanted the construction to be near completion before the city could determine whether the permits were validly issued. (See *O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 357 N.E.2d 472.) We see no reason to overturn its decision in this matter. Thus Space Station's estoppel argument fails under both parts of the *Cities Service* exception.

Space Station also cites *Leisuretime Recreation Center VI, Inc. v. Byrne* (1981), 93 Ill. App. 3d 489, 417 N.E.2d 658, in support of its estoppel argument. In that case, Leisuretime applied for a PPA license to operate an arcade more than one month before the city council passed section 104.2—9.1. Leisuretime's property was located within 200 feet of a residential area. Nevertheless, subsequent to the effective date of the enactment of section 104.2—9.1, Leisuretime was issued a building permit, and the license application was approved by the city's zoning, police, fire and building departments. Two months after the building permit was issued, and after Leisuretime had expended $21,300 in remodeling the premises, its license application was denied due to the violation of section 104.2—9.1. The appellate court affirmed the trial court's order issuing a writ of *mandamus* to order the city to issue an arcade license, finding that because the acts of city officials had induced Leisuretime to change its position in reliance thereon, the city was estopped from denying the license. *Leisuretime* is inapposite to the instant case, as Space Station was aware of the ordinance requirement before it started construction of the arcade and, as discussed above, was not induced to act by the conduct of city officials and did not act in reliance on the permits.

■ A building permit cannot be granted in violation of the terms of a zoning ordinance; an unauthorized permit is a nullity and it confers no right on the permitee. (*Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653; 10 Ill. L. & Prac. *Cities, Villages & Other Municipal Corporations* sec. 1147 (1955).) Space Station gained no rights upon the issuance of the permits, and cannot rely on that issuance to estop the city from revoking them. After considering the facts and circumstances of the instant case, the trial court properly concluded that there was no basis for estopping the city from revoking the building and electric permits.

■ Space Station argues that the permit revocations were improperly based on section 43—10 of the Municipal Code. Section 43—10 makes unlawful any departure from approved plans involving a violation of the code on which the permits are issued. The evidence presented in the trial court showed that, because Space Station was within 200 feet of the nearest residential area, it violated section 104.2—9.1. Hence, there was a proper basis for the revocation of its permits and denial of its PPA license application. The fact that the permit revocations employed a technical misnomer should not affect the validity of the revocations.

Finally, Space Station urges us to reverse the trial court's conclusion that Space Station is not entitled to damages. It is unnecessary to address the question of damages in light of our findings.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and WHITE, JJ., concur.