METROMEDIA, INC., Plaintiff-Appellee and Cross-Appellant, v. JOHN D. KRAMER, Secretary of Transportation, *et al.*, Defendants-Appellants and Cross-Appellees (National Advertising Company, Intervenor-Appellant and Cross-Appellee).

First District (5th Division) No. 85—2802

Opinion filed February 6, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Richard A. Redmond, Special Assistant Attorney General, of Chicago, of counsel), for appellants John D. Kramer and Matthew L. Jones.

John J. George, of Daley & George, Ltd., of Chicago, for appellant National Advertising Co.

Robert J. Weber, of Chicago, for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal and cross-appeal from an order (a) granting partial summary judgment to each party in an action for declaratory judgment and a writ of *mandamus* and (b) dismissing those counts of the complaint alleging tortious interference with contractual relations and prospective economic advantage.

Plaintiff, Foster & Kleiser (F & K) a division of Metromedia, Inc., an outdoor advertising business, filed a two-count amended complaint against defendants, officers of the Illinois Department of Transporta-

tion (Department), alleging that the Department wrongfully: (1) revoked two permits issued to it for the construction of billboards on sites adjacent to the Kennedy and Eisenhower Expressways, respectively, and (2) granted permits for those sites to its competitor, National Advertising, Inc. (National). F & K sought a declaration that the revocation of its permits and the subsequent issuance of permits to National were improper and a writ of *mandamus* to compel the Department to reinstate its permits. Having begun construction of its billboards by the time the complaint was filed, National was granted leave to intervene, following which F & K filed a second-amended complaint seeking damages from National for tortious interference with contractual relations (count III) and prospective economic advantage (count IV). The parties thereafter filed cross-motions for summary judgment as to counts I and II, and F & K moved for partial summary judgment as to counts III and IV. Following a hearing, the trial court (a) granted summary judgment for F & K on count I and ordered the Department to reissue F & K's permit for the Kennedy site, (b) granted summary judgment for the Department on count II and thereby denied F & K's request for a writ of *mandamus* to compel the Department to issue a permit for the Eisenhower site, and (c) dismissed counts III and IV with prejudice. The Department and National appeal from summary judgment for F & K on count I; F & K cross-appeals from summary judgment for the Department on count II and from the dismissal of counts III and IV.

This case involves the Highway Advertising Control Act of 1971 (Ill. Rev. Stat. 1981, ch. 121, par. 501 *et seq.*) (the Act), the following sections of which are most pertinent to the issues presented:

"Along interstate highways and expressways no two sign structures on the same side of the highway shall be erected less than 500 feet apart. ***" (Ill. Rev. Stat. 1981, ch. 121, par. 506.03(b).)

"No sign, *** may be erected after the effective date of this Act without first obtaining a permit from the Department. The application for a permit shall be on a form provided by the Department and shall contain such information as the Department may reasonably require. Upon receipt of an application containing all required information and appropriately executed and upon payment of a fee of $5, the Department then issues a permit to the applicant for the erection of the sign, provided such sign will not violate any provision of this Act." (Ill. Rev. Stat. 1981, ch. 121, par. 508.)

"The following signs are unlawful and a public nuisance:

(a) Signs erected after the effective date of this Act in violation of this Act;

(b) Signs not registered in accordance with this Act or in accordance with the regulations established by the Department;

(c) Signs without valid permits, as required by this Act or by regulations established by the Department." (Ill. Rev. Stat. 1981, ch. 121, par. 510.)

"The Department may establish rules and regulations regarding implementation and enforcement of this Act ***." (Ill. Rev. Stat. 1981, ch. 121, par. 514.01.)

One of the regulations established by the Department states that "[a]pplication to erect a new sign must be submitted to the Department *** on Form BRW 1171 or BRW 1172" (92 Ill. Admin. Code 552.801(b) (1985)), both of which require the applicant to "[a]ttach a copy of the executed lease."

On August 10, 1981, F & K submitted an application on Department Form BRW 1171 for a permit to erect a billboard on property owned by the Chicago and Northwestern Railway Co. (CNW) at a location 700 feet south of Montrose Avenue on the west-side right-of-way adjacent to the Kennedy expressway, a site represented to be 550 feet from the nearest existing or proposed sign. In the space below paragraph 14, directing the applicant to attach a copy of the executed lease, was written "#32642," identified by Kelly Fields, an employee in F & K's public relations department, as an internal bookkeeping number assigned to the sign application file in the company's "lease register." The application was approved and a permit—tag number 1—1428—was issued the following day by George Gianis, chief of the Department's Cook County signboard section.[1]

On November 4, 1981, National also applied for a permit to construct a billboard on the west side of the Kennedy Expressway on property designated on the first page of the application as belonging to Kane-Miller Properties, Inc. (K-M) at 4404 West Berteau Avenue in Chicago. According to the application—to which a document purporting to be an executed lease between National and K-M was attached[2]—the sign was to be erected "1/2 mile" south of Montrose Avenue and 569 feet from the nearest other constructed or proposed sign.

---

[1]Upon approval, the Department assigns a "tag" number to the application—which then becomes the permit—and issues a tag which must be displayed on the signboard once it is erected.

[2]It was subsequently revealed that a National employee not only prepared the document but also signed the names of the National and K-M representatives appearing thereon.

On the basis of this information, Gianis issued a permit (1—1483) to National for the K-M site on November 13, 1981.

On February 4, 1982, shortly before the expiration of the 180-day period given a permittee to construct a sign on the permit site,[3] F & K reapplied for a permit for the CNW location. Notwithstanding that, as before, no lease was attached to the application, on March 9, 1982, Gianis issued a second permit (1—1559) to F & K therefor.

On April 16, 1982, after determining, during a field check of the K-M site, that not only was it less than ½ mile south of Montrose Avenue but, in fact, less than 500 feet from the proposed location of F & K's sign, Gianis sent a letter advising National that, due to the spacing requirements of the statute, the permit issued to it in November 1981, was revoked.

Sometime in late April 1982, Robert Stapleton, an employee of National, informed Gianis that when he contacted the real estate attorney for CNW to find out the exact location of F & K's proposed sign so as to determine the feasibility of constructing its sign in that area without there being another spacing conflict, he was told that, although presented with an "offer to lease" in August 1981, F & K had not returned an executed copy indicating its acceptance thereof.

When Matthew Jones, Gianis' supervisor, learned—apparently through Stapleton—that Gianis had been issuing permits to F & K despite its failure to furnish leases with its applications, he reminded Gianis that the practice violated Department regulations and ordered that it be stopped. He further directed Gianis to instruct all of the outdoor advertising companies to include with their applications not only a copy of a lease but also a location drawing depicting the specific site on which the sign would be erected. In his deposition, Jones explained that the purposes of requiring a lease were to ensure that the sign owner had a valid right to use the land, to determine the precise location of the proposed sign, and to prevent the possibility of an advertising company monopolizing an area by obtaining permits for sign locations for which it (the permittee) has no lease and thereby foreclosing negotiations between competitors and the owners of choice sign sites. Gianis advised F & K, through a telephone conversation with Fields on April 22, and by a letter dated April 30, to include with "all future" applications a copy of an executed lease.

On April 27, 1982, National submitted an application—and a legitimately executed lease with K-M—for a permit to construct a sign on

---

[3]It is stated on the application, "[i]f [a] sign is not erected within 180 days after [the] date of issuance, this permit becomes invalid."

K-M's property, 750 feet south of Montrose Avenue. National also sent a letter, dated April 29, to the Department (a) objecting to the revocation of the previous permit, reiterating that F & K's failure to submit a copy of a lease with CNW on either its original or renewal application for that site violated Department regulations and (b) requesting that the Department revalidate its previously revoked permit on the basis of the correct location information supplied in the April 27 amended application.

In his deposition, Jerome Kleis, an assistant of Gianis, testified to a telephone conversation with Fields in which he requested a copy of the F & K lease with CNW, explaining to her that it was needed because of a "problem with conflicting applications." Gianis testified that he requested the lease from Fields at least three or four times between April 30 and May 24 and that she told him that the manager of the real estate department was on vacation, but that she would "get it in soon." Fields denied that Kleis ever asked for the lease and testified to receiving only one such request from Gianis during one of many routine telephone conversations with him sometime in the second week of May.

In a letter dated May 24, 1982, Gianis informed F & K that its permit for the CNW site was revoked because of its failure to submit a duly executed lease. That same day, a permit was issued to National to construct its billboard on the K-M site adjacent to the CNW property. At a June 1 meeting with Jones and Gianis at the Department, Fields and her supervisor, Fred Schmigle, produced an "offer to lease" from CNW, a copy of which also arrived from Fields in Gianis' mail that same day,[4] but their request that the revoked permit be reissued was denied by Jones and, four weeks later, count I of F & K's complaint was filed.

With respect to count II, it further appears from the record that on or about February 18, 1982, National applied for a permit to construct a billboard next to the Eisenhower Expressway on a parcel of land owned by Office Furnishings, Ltd., at 2655 West Harrison Street in Bellwood. In the "proposed sign location" section on the application form was written "⅝ miles east of Manheim Road." Attached thereto was a copy of an executed lease agreement with Office Furnishings which contained a legal description of the property and both a sketch and a surveyor's plat of the area indicating the site of the

---

[4]In his deposition and in a subsequent affidavit, CNW's real estate attorney stated that although an offer to lease had been tendered to F & K for the subject site, F & K had never returned an executed acceptance thereof.

proposed sign. A permit was granted to National on March 3, 1982.

On March 11, F & K applied for a permit to construct a sign on property owned by Wire Cloth, Inc., at 2801 West Eisenhower Expressway in Bellwood. The application, which was not accompanied by a lease, described the intended sign location as 900 feet west of 25th Street next to the expressway. F & K was issued a permit therefor on May 6, 1982.

In late June, F & K contacted Gianis to complain that the site on which National had begun construction was less than 500 feet from the site for which it (F & K) had been issued a permit. A review of the documents submitted by National disclosed that the information on the application regarding the sign's location did not correspond to the information contained in the lease and drawings attached thereto. Following an investigation, Jones concluded that although the application was incorrect, the drawings were accurate. He thereafter consulted with Department representatives in Springfield, who informed him that where a conflict concerning location exists between the words on an application and the descriptive drawings attached thereto, the drawings are controlling for the purpose of determining the propriety of application approval. Pursuant thereto and in accordance with its "first-issued" policy, the Department notified F & K, in a letter dated June 29, 1982, that its permit for the Wire Cloth site had been issued in error and was, therefore, cancelled. F & K thereafter amended its complaint to add count II against the Department and count III and IV against National.

OPINION

■■ *Mandamus* is an order commanding the government body or officer to whom it is addressed to perform some specific duty to which the claimant has a clear right but which the body or officer failed to perform. (*People ex rel. American National Bank & Trust Co. v. Smith* (1969), 110 Ill. App. 2d 354, 249 N.E.2d 232.) As such, it is considered an extraordinary remedy to be granted only where a clear and undoubted right to the relief requested is shown. (*Space Station 2001, Inc. v. Moses* (1983), 118 Ill. App. 3d 658, 455 N.E.2d 266; *Kohl Outdoor Advertising, Inc. v. Department of Transportation* (1979), 72 Ill. App. 3d 413, 390 N.E.2d 950; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380; *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653). Therefore, anything less than strict and complete compliance with all valid requirements of any applicable statutes or ordinances by the party seeking the writ must result in denial of it. *Space Station 2001, Inc. v. Moses*

(1983), 118 Ill. App. 3d 658, 455 N.E.2d 266; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380; *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653.

Here, in granting summary judgment for F & K on count I of its complaint, the trial court found that, having for so many years forgiven the requirement that a lease be attached to the application and, having issued permits to F & K on applications containing only a lease reference number, the actions of the Department officials in reinstating the lease requirement in this instance was unfair and unreasonable, particularly in view of the prospective wording of Gianis' letter regarding the submission of leases with "all future applications." The court therefore concluded that the "simultaneous" revocation of the permit issued to F & K prior to the "re-enforcement" of the lease requirement and issuance of one to National constituted an abuse of discretion by Gianis in his capacity as an official of the Department.

■ Having carefully reviewed the entire record, which was made unnecessarily arduous by the parties' selective and scattered inclusion of short excerpts from the various deposition transcripts, we share the viewpoint expressed by the trial court at several points during the hearing on this matter that this litigation was avoidable, having resulted from a variety of blunders and misprisions, not the least of which was the laxity of certain Department employees in following prescribed Department procedures. Nevertheless, it is undisputed that one of the four purposes stated by the legislature of regulating the construction and maintenance of outdoor advertising signs is "to promote the reasonable, orderly and effective display of such signs" (Ill. Rev. Stat. 1981, ch. 121, par. 501); that the Department is the agency designated to administer the Act; that it was empowered by statute to promulgate rules and regulations regarding the implementation and enforcement thereof (Ill. Rev. Stat. 1981, ch. 121, par. 514.01); that the Act provides that signs shall not be erected less that 500 feet apart (Ill. Rev. Stat. 1981, ch. 121, par. 506.03); that permit applications must be on Department forms and shall contain "all" such information as the Department may reasonably require and be "appropriately executed"; (Ill. Rev. Stat. 1981, ch. 121, par. 508); that Forms BRW 1171 and BRW 1172 both mandate that the applicant "[a]ttach a copy of the executed lease"; and that although cognizant of that requirement, F & K, admittedly, did not follow it. Having failed to show that it had fully complied with the Department regulations governing permit applications and, thereby, had a "right" to the revoked permit in the first instance, F & K did not establish its entitlement to a writ of *mandamus* ordering the Department to reissue the permit and the

granting of that writ was, therefore, error.

F & K argues, however, that by virtue of the "long-standing agreement" between it and the Department whereby lease numbers were furnished and accepted in lieu of copies of the executed leases so as to reduce the amount of paperwork involved in the processing of applications, the Department has waived any right to revoke the permit on the basis of its (F & K's) noncompliance with the lease requirement or, stated another way, that the doctrine of equitable estoppel operates to preclude revocation by the Department of the permit at issue.

■■ ■ The general rule is that a government entity cannot be estopped by the conduct of one of its officers which exceeds the authority conferred upon him (*Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605; *Space Station 2001, Inc. v. Moses* (1983), 118 Ill. App. 3d 658, 455 N.E.2d 266; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380; *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653) and that anyone dealing with a government agency assumes the risk of having ascertained whether the official or agent is acting within the bounds of his authority (*People ex rel. American National Bank & Trust Co. v. Smith* (1969), 110 Ill. App. 2d 354, 249 N.E.2d 232; *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653). A limited exception to the general rule exists only where the party invoking the doctrine of estoppel shows (1) some affirmative act by the government agency which induced his good-faith actions *and* (2) that without the relief requested he would suffer a substantial loss. (*O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 357 N.E.2d 472; *Space Station 2001, Inc. v. Moses* (1983), 118 Ill. App. 3d 658, 455 N.E.2d 266; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380; see *City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 418 N.E.2d 63.) It normally does not apply where a permit was illegally or erroneously issued as a result of the misconduct or mistake of a ministerial employee—as opposed to an affirmative act, such as the passage of legislation, of the governmental body itself (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 405 N.E.2d 1376; *People ex rel. American National Bank & Trust Co. v. Smith* (1969), 110 Ill. App. 3d 354, 249 N.E.2d 232)—the courts having repeatedly held that an unauthorized permit is a nullity and confers no rights upon the permittee (*Space Station 2001, Inc. v. Moses* (1983), 118 Ill. App. 3d 658, 455 N.E.2d 266; *City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 418 N.E.2d 63; *Ganley v. City of Chicago* (1984), 18 Ill. App. 3d 248, 309 N.E.2d 653).

Keeping these principles in mind, we note initially that there is no documentation of and little other evidentiary support in the record for F & K's assertion as to the existence of an agreement allegedly entered into with the Department in 1972, when the Act became effective. At most, it appears from the depositions of both F & K and Department employees, that there was some type of informal, unofficial "arrangement" applicable only to those permit applications submitted by F & K, which, in our view, amounted to nothing more than an unauthorized, mutual disregard for the regulations by F & K and certain employees of the signboard section. This is hardly the type of affirmative act or conduct by a government body necessary to meet the first test of the exception discussed above.

 █ Indeed, the arrangement does not even rise to the level of a "custom" as also suggested by F & K, since to be considered a "custom" the practice must be uniform and so well established as to have the force of law, and in any event, cannot be invoked where it circumvents a rule or statute. (*Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380.) Here, whatever the "agreement," dispensation of the lease requirement apparently was accorded only to F & K, and thus, was not a prevailing or uniform custom established by the Department. Furthermore, according to Jones, not only was the practice not sanctioned by the Department but was, as we stated earlier, actually violative of the statutory provision that permit applications contain "all" information required by the Department and be "appropriately executed." The attachment of an executed lease being among the requirements specified on the application forms drafted by the Department and designated as the only forms acceptable, it was not within the discretion of Department officials to disregard that rule. (See, *e.g., Margolin v. Public Mutual Fire Insurance Co.* (1972), 4 Ill. App. 3d 661, 667, 281 N.E.2d 728, 733 ("[h]aving once established rules and regulations pursuant to statutory authority, an administrative agency [including the Director thereof] is bound by those rules and regulations and may not violate them. (4 Ill. App. 3d 661, 667, 281 N.E.2d 728, 733).) In doing so with respect to F & K's applications, they acted outside the bounds of their authority, thus rendering the doctrine of estoppel inapplicable.

Moreover, there is nothing in the record to show that F & K made any expenditures in reliance on the permit or that unless the permit is reissued it will suffer a substantial loss. Therefore, F & K has also failed to meet the second of the two tests necessary to prevail in its action for *mandamus* on the theory of equitable estoppel. *Cf. O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 357 N.E.2d

472; *Space Station 2001, Inc. v. Moses* (1983), 118 Ill. App. 3d 658, 455 N.E.2d 266.

F & K alternatively asserts that even assuming that the Department had not "waived" its right to enforce the lease requirement with regard to the application at issue, its noncompliance therewith was not such a material deviation from the regulations as to render the permit void or to justify its revocation. Citing *Lesniak v. Department of Registration & Education* (1960), 24 Ill. App. 2d 153, 164 N.E.2d 256, and *Citrano v. Department of Registration & Education* (1980), 90 Ill. App. 3d 937, 414 N.E.2d 74, for the proposition that to justify revocation, the defect upon which it is based must be so material that, if it were known to the agency at the time the application was submitted, the permit would not have been issued in the first instance, F & K argues that a review of the evidence regarding Department procedures indicates that its "primary concerns" are the zoning of the land on which the sign is to be constructed, the location of the land in relation to the highway, the nature of the advertisement to be displayed, the type of lighting to be used, the size of the sign, and the spacing between signs in a given area; that "[i]f at all, [it] was only incidentally interested in the ownership of the land and a sign company's right[s] *** therein;" and that, in fact, the existence of a lease was "totally immaterial" to those who made the decisions regarding the issuance of permits.

Initially, we note that in advancing this argument F & K ignores the fundamental maxim enunciated above, *i.e.*, that the party seeking a writ of *mandamus* must show strict and complete compliance with all prerequisites for the relief requested. In any event, neither the facts presented nor the cases cited support its position.

In *Lesniak*, for example, the court's ruling that the administrative agency had not abused its discretion in revoking a certificate issued to an Indiana funeral director who, it was learned, had falsely stated on his application therefor that he was an Illinois citizen was not based solely on the materiality of the misrepresentation but in large part on the language of the statute governing the registration of funeral directors already licensed in another State, which made clear that even where all other certification conditions were met, issuance by the agency of a certificate to a nonresident applicant was not mandatory in the first instance. Thus, *Lesniak* neither stands for the proposition advanced by F & K that unless a defect is "material" it cannot serve as a ground for revocation, nor is it factually similar enough to the case at bar to warrant further comparative discussion.

In *Citrano*, we reviewed the propriety of a decision to revoke a

barber's license on the grounds that certain statements and character references in his application were false and that he was not sufficiently proficient in English to have been able to successfully complete the written examination without assistance. Determining first that the purpose of the licensing procedure was to protect the public by making efforts to ensure that those seeking to practice as barbers do so with competency and integrity, we found that, in view of the evidence that the licensing agency had allowed five years to pass before taking action on the matter, that he was a skilled barber who had 17 years' experience in that occupation prior to immigrating to the United States and that aside from the conduct complained of there was nothing in his personal history before or since to indicate that he was of other than good moral character, revocation was too harsh a sanction, particularly in view of the mitigating circumstances and the availability of lesser sanctions, such as suspension.

While the reasoning in *Citrano* might have been persuasive, to some degree, had this case come before us in the posture of an appeal from an order upholding the summary revocation by the Department of all permits granted F & K since 1972 for which leases had not been submitted, it is not persuasive with regard to the facts before us. The first and most obvious distinction is that, in this case, revocation of the permit occurred less than three months after its issuance and, perhaps more important, prior to any detrimental reliance by F & K on it. Furthermore, the situation in *Citrano* did not involve a conflict between two parties claiming entitlement to the same license as is the case here.

Moreover, as noted earlier, one purpose of the Act, pursuant to which the regulations regarding the permit applications and sign registrations were promulgated, is "to promote the reasonable, orderly and effective display of [outdoor advertising] signs." (Ill. Rev. Stat. 1981, ch. 121, par. 501.) As is evidenced by the occurrences giving rise to this litigation alone, it is clear that an expedient determination of whether a proposed sign conforms to all statutory requirements and standards—including those described by F & K above as the Department's "primary concerns," and particularly those relating to the site's exact location—would be materially aided by reference to the specific information contained in an executed lease rather than to the general information on the face of the application. Thus, contrary to F & K's belief, and the apparent attitude previously taken by a few Department employees, it is our opinion that the requirement that a lease be submitted with a permit application directly relates to the furtherance of the "reasonable and orderly" regulation of outdoor ad-

vertising and that the failure to comply with that requirement constituted a material deviation from the regulations.

■■ Neither do we agree with F & K's assertion that revocation was improper because the Department did not give prior notice thereof or conduct a prerevocation hearing. First, while there is some dispute as to the number of times the Department requested the lease between late April—when National submitted its amended application and a letter objecting to the issuance of a permit to F & K—and May 24—when that permit was revoked—it is undisputed that F & K was advised on at least one occasion in the weeks preceding revocation of the conflict arising out of its failure to attach a lease to its application for the CNW site and the attendant necessity for the imminent production of that document and was thereby given the opportunity to correct the defect in its application. In any case, we reiterate the well-settled principle enunciated in *City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 418 N.E.2d 63—wherein the court rejected a similar argument in a suit involving the revocation of an erroneously issued building permit—that an unauthorized permit is a nullity and confers no rights, such as the right to a prerevocation hearing, upon the permittee.

■■ We turn then to F & K's contention that the trial court erred in granting summary judgment for the Department and National on count II of the complaint relating to the permit issued to National for the site adjacent to the Eisenhower Expressway. Under the same principles of law and for substantially the same reasons given above, we find that F & K has failed to meet the burden imposed on a party claiming entitlement to a writ of *mandamus*, *i.e.*, to show strict compliance with all statutory prerequisites for the relief requested—in this case, the requirement that an executed lease be attached to the permit application.

Furthermore, we see no error in the Department's official determination that because the lease and the survey plat attached thereto provided a precise legal description of the property and indicated the exact site of the proposed sign, the information contained therein was controlling over that appearing on the face of the form application. Indeed, as we opined earlier, the very fact that this case is before us illustrates the highly competitive nature of the outdoor advertising industry and the concomitant importance of a lease to the Department in regulating the construction of outdoor advertising signs in an orderly manner. We therefore conclude that the trial court was correct in granting summary judgment for the Department and National on

count II of F & K's complaint for declaratory judgment and a writ of *mandamus*.

In view of our findings on counts I and II, it is clear that F & K's contentions that National's conduct with respect to the facts alleged therein constituted tortious interference with its contractual relations and/or prospective economic advantage for which it sought damages in counts III and IV must necessarily fail.

For the reasons stated, we reverse that portion of the trial court's order granting summary judgment for F & K on count I of its complaint, affirm summary judgment for the Department as to count II, affirm the dismissal of counts III and IV, and remand this case for further proceedings, consistent with the views expressed herein.

Affirmed in part, reversed in part and remanded.

LORENZ and PINCHAM, JJ., concur.