2019 IL App (1st) 182522

FIRST DISTRICT,
SECOND DIVISION
October 15, 2019

No. 1-18-2522

)
SHOUT OUTDOOR MEDIA, LLC,                          )
                                                   )
                        Plaintiff-Appellant,       )
                                                   )
v.                                                 )          Appeal from the
                                                   )          Circuit Court of
THE DEPARTMENT OF TRANSPORTATION;                  )          Cook County, Illinois.
RANDALL S. BLANKENHORN, Secretary of               )
Transportation; ANTHONY QUIGLEY, Region 1          )          No. 18 CH 1605
Engineer of the Department of Transportation;      )
LAURA R. MLACNIK, Engineer of Land Acquisition     )          Honorable
of the Department of Transportation; and TIM       )          Thomas R. Allen,
HOESLI, Outdoor Advertising Manager of the         )          Judge Presiding.
Department of Transportation,                      )
                                                   )
                        Defendants-Appellees.      )
                                                   )

      JUSTICE COGHLAN delivered the judgment of the court, with opinion.
      Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and
opinion.

## OPINION

¶ 1      In 2016, plaintiff Shout Outdoor Media, LLC (Shout), applied to the Illinois Department

of Transportation (IDOT) for a permit to place a billboard at 770 North Milwaukee Avenue in

Chicago.[1] IDOT denied the application, citing the presence of another billboard within 500 feet

at 1135 West Chicago Avenue. Under the Highway Advertising Control Act of 1971 (Act), "no

two sign structures on the same side of the highway shall be erected less than 500 feet apart."

225 ILCS 440/6.03(b) (West 2016).

---

[1] The original application was submitted by OOS Investments, LLC, which is the parent company
of Shout. For simplicity, we shall refer to both entities as Shout.

¶ 2     Shout filed a complaint in the circuit court for a writ of *certiorari* to review IDOT's final administrative decision. The circuit court affirmed the denial of the permit. Shout appeals, arguing that the Chicago Avenue sign is "an illegal sign under the Act" and, therefore, should not count for purposes of the 500-foot spacing requirement. For the reasons that follow, we affirm IDOT's decision to deny Shout's permit application.

¶ 3                                     BACKGROUND

¶ 4     In February 1996, David Gervercer entered into a lease with Universal Sign Company[2] to erect and maintain a billboard on Gervercer's property at 770 North Milwaukee Avenue. On November 13, 1996, IDOT issued Universal Sign Company a permit for the billboard (the old Milwaukee sign), visible to southbound traffic on I-90 and I-94.

¶ 5     On January 11, 2002, IDOT issued a permit for a billboard at 1135 West Chicago Avenue, also visible to southbound traffic on I-90 and I-94. The parties agree that issuance of this permit was improper because the Chicago Avenue sign was within 500 feet of the old Milwaukee sign.

¶ 6     In 2012, Gervercer terminated his lease with Universal Sign Company, and Universal Sign Company removed the old Milwaukee sign. Gervercer then entered into a new lease with Shout.

¶ 7     On December 16, 2016, Shout applied for a permit to place a sign in the exact location formerly occupied by the old Milwaukee sign. Following a conference between the parties, on August 1, 2017, IDOT sent Shout a notice that it intended to deny the application for two reasons: (1) Shout's proposed sign was within 500 feet of the Chicago Avenue sign, and

---

[2] Universal Sign Company was later succeeded by Clear Channel. For simplicity, we shall refer to both entities as Universal Sign Company.

(2) Shout's site drawing did not include the distances from the proposed sign to rights-of-way at both the interstate highway and North Ogden Avenue.

¶ 8         On August 29, 2017, Shout sent a timely response to IDOT, arguing that, because the Chicago Avenue sign was improperly permitted, it could not serve as the basis for denying Shout's permit application. Accordingly, Shout requested that IDOT require the Chicago Avenue sign to be removed and then issue a permit to Shout for the Milwaukee site. With regard to the alleged deficiencies in Shout's site drawing, Shout requested leave to fix those issues after resolving the spacing issue.

¶ 9         On January 2, 2018, IDOT issued a final denial of Shout's permit application, citing the same two reasons from its earlier letter. With regard to the spacing issue, IDOT stated: "After thorough review and examination, the Department determined that it is required to consider [the Chicago Avenue sign] in the examination of spacing requirements for your proposed sign site."

¶ 10         On February 6, 2018, Shout filed a complaint in the circuit court seeking a writ of *certiorari* against IDOT, its Secretary, and three IDOT employees. In its complaint, Shout reiterated its position that the Chicago Avenue sign was "improperly permitted and illegal" and, therefore, could not serve as the basis for denying Shout's otherwise proper application. Shout requested that the circuit court order IDOT to approve its application and permit construction of the proposed sign.

¶ 11         Following briefing and argument by the parties, the circuit court denied Shout's petition for *certiorari* and affirmed IDOT's final administrative decision denying Shout's application. The court acknowledged that IDOT "clearly violat[ed] the law" when it issued a permit for the Chicago Avenue sign in 2002. But it found that IDOT's 2018 decision was "by the book":

because the Chicago Avenue sign was within 500 feet and because of the deficiencies in Shout's site drawing, IDOT acted properly in denying Shout the permit. The court concluded:

"IDOT in 2018 *** did what they are supposed to do. IDOT in 2002 did not. *** But I'm making my decision just on the book in the same way that IDOT did in real-time, 2017 and 2018, and not in 2002 when somebody played games with that other billboard on Chicago Avenue, and therefore I'm going to deny the petition for cert."

Shout timely appealed.

¶ 12                                          ANALYSIS

¶ 13        The Highway Advertising Control Act of 1971 regulates outdoor advertising signs in areas adjacent to interstate and primary highways. 225 ILCS 440/1 (West 2016). With exceptions not relevant here, anyone who wishes to erect such a sign must first obtain a permit from IDOT (*id.* § 8), which is tasked with enforcing and implementing the Act (*id.* § 14.01). The Act's spacing requirement is in section 6.03(b), which provides: "Along interstate highways and expressways no two sign structures on the same side of the highway shall be erected less than 500 feet apart." *Id.* § 6.03(b).

¶ 14        The Act also provides that IDOT may establish its own regulations as long as they are not inconsistent with the Act. *Id.* § 14.01. In denying Shout's permit application, IDOT relied on the following regulation:

"Any sign which has received a permit or a registration shall be included in spacing measurements whether or not the permit or registration has been revoked as long as the sign is visible from any place on the main traveled way of the highway." 92 Ill. Adm. Code 522.200(h) (1998).

¶ 15    Shout contends that we should reverse IDOT's denial of its permit application and remand to IDOT with instructions to issue the permit. In support, Shout raises three arguments: (1) under section 522.200(h), only lawful signs may be taken into account in computing the 500-foot spacing requirement (*i.e.*, IDOT is misinterpreting its own regulation); (2) alternatively, if section 522.200(h) does require that unlawful signs be taken into account, it is in contravention of the Act and cannot stand; (3) IDOT has an independent obligation under the Act to "address" the Chicago Avenue sign (presumably, by revoking its permit and requiring it to be taken down).

¶ 16    Initially, the parties dispute the proper standard of review. Shout argues that our review of IDOT's decision is *de novo*, while IDOT argues that we should affirm unless its decision was clearly erroneous. In administrative cases, we review the decision of the administrative agency, not the decision of the circuit court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). Our standard of review depends on whether the question raised is purely factual, purely legal, or a mixed question of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). "Where the facts are undisputed and there is a dispute as to whether the governing legal provisions were interpreted correctly by an administrative agency, the case presents a purely legal question for which our review is *de novo*." *CBS Outdoor, Inc. v. Department of Transportation*, 2012 IL App (1st) 111387, ¶ 26.

¶ 17    Here, it is undisputed that IDOT erred in 2002 when it issued a permit for the Chicago Avenue sign. IDOT admitted as much before the trial court, stating that "it would appear that a mistake was made," and it similarly concedes in its appellate brief that "a mistake *** apparently occurred with the Chicago Avenue sign in 2002." Nor could IDOT reasonably argue otherwise, since the old Milwaukee sign occupied the same site as Shout's proposed sign, which is within

500 feet of the Chicago Avenue sign. Thus, the sole question before us is the legal effect of this mistake on Shout's sign permit application, and our review is *de novo*. See *id.*

¶ 18    Even under *de novo* review, we may afford "substantial weight and deference" to an agency's construction of the law if the statutory language is ambiguous. *Illinois Landowners Alliance, NFP v. Illinois Commerce Comm'n*, 2017 IL 121302, ¶ 46. But where the meaning of the statute is clear, an agency's interpretation of the statute cannot alter its plain language. *Id.* Additionally, agencies enjoy "wide latitude" in adopting regulations to perform their statutory duties, although such regulations will be held invalid if they conflict with their enabling statute. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 38; see *Bond Kildeer Marketplace, LLC v. CBS Outdoor, Inc.*, 2012 IL App (2d) 111292, ¶ 21 (giving no weight to IDOT regulation that contradicted "clear and unambiguous" wording of the Act).

¶ 19    We first consider Shout's argument that, under section 522.200(h), only lawful signs may be taken into account in computing the 500-foot spacing requirement. On its face, section 522.200(h) contains no such limitation. On the contrary, it states: "*Any* sign which has received a permit or a registration shall be included in spacing measurements whether or not the permit or registration has been revoked." (Emphasis added.) 92 Ill. Adm. Code 522.200(h) (1998). There is no distinction between lawfully and unlawfully issued permits, and, in fact, signs with permits revoked due to a violation of the Act are explicitly included.

¶ 20    Shout nevertheless argues that section 522.200(h) implicitly includes only signs that were initially lawful under the Act because section 8 of the Act provides that IDOT may only issue a permit if the proposed sign "will not violate any provision of this Act." 225 ILCS 440/8 (West 2016); see also *id.* § 10 (signs erected in violation of the Act are "unlawful and a public nuisance"). But IDOT regulations contemplate that IDOT may, at times, issue unlawful permits

due to "false information in the application" and "errors in permit processing." 92 Ill. Adm. Code 522.110 (2011) (listing grounds for revocation of a permit). Thus, there is no implication that only initially lawful permits are included within the ambit of section 522.200(h), either in the text of that section or otherwise.

¶ 21    Shout next argues that, to the extent that section 522.200(h) requires unlawful signs to be taken into account, the regulation is in contravention of the Act and cannot stand. We disagree. Although the Act provides that IDOT may not issue unlawful permits (225 ILCS 440/8 (West 2016)) and sets forth procedures for the removal of unlawful signs (*id.* § 10), it is silent as to the effect of an unlawfully erected sign on a pending permit application. Thus, IDOT's interpretation of the Act is not inconsistent with the language of the statute.

¶ 22    IDOT's interpretation is also supported by our decision in *CBS Outdoor*, 2012 IL App (1st) 111387. In *CBS Outdoor*, the plaintiff and Diehl both applied for outdoor advertising permits on adjacent plots of land. *Id.* ¶¶ 3, 8. While plaintiff's application was still pending, IDOT issued a final denial of Diehl's application. *Id.* ¶ 11. Diehl then sent an "Amended Application" to IDOT. *Id.* ¶ 15. In contravention of its own procedures, IDOT reopened Diehl's application, approved it, and then denied plaintiff's application based on the 500-foot spacing requirement. *Id.* ¶¶ 17-18. Plaintiff sued IDOT and Diehl, seeking reversal of IDOT's approval of Diehl's permit application. *Id.* ¶ 20.

¶ 23    IDOT and Diehl argued that plaintiff lacked standing to challenge IDOT's issuance of a permit to a third party. *Id.* ¶ 23. The *CBS Outdoor* court rejected this argument, finding that plaintiff had standing because "the issuance of the Diehl permit blocked consideration of plaintiff's application." *Id.* ¶ 25. The court then reversed IDOT's decision to grant Diehl the

permit because "IDOT failed to follow its own rules" in processing Diehl's permit application. *Id.* ¶ 32.

¶ 24    Shout cites *CBS Outdoor* for the proposition that an improperly issued permit is not grounds to deny an otherwise proper permit. We find no support for this claim in the text of the opinion. On the contrary, *CBS Outdoor* plainly states that the *unlawful* Diehl permit "blocked consideration of plaintiff's application" (*id.* ¶ 25), thus giving plaintiff standing to challenge its issuance. Conversely, if the unlawful Diehl permit presented no legal barrier to the approval of plaintiff's application for a permit less than 500 feet away (as Shout now argues), plaintiff would have had no grounds on which to seek the Diehl permit's revocation.

¶ 25    Shout next cites *Scanlon v. Faitz*, 57 Ill. App. 3d 649, 653 (1978), *aff'd*, 75 Ill. 2d 472 (1979), and *Metromedia, Inc. v. Kramer*, 152 Ill. App. 3d 459, 467 (1987), for the proposition that an improperly issued permit is a "nullity" that confers no rights upon the recipient. Shout argues that, since the Chicago Avenue sign's permit is a "nullity," it cannot be used to deny Shout's permit application. IDOT argues that even an improperly issued permit may have legal consequences under appropriate circumstances, citing our more recent decision in *Drury Displays, Inc. v. Brown*, 306 Ill. App. 3d 1160 (1999).

¶ 26    *Scanlon*, *Metromedia*, and *Drury Displays* all involve similar facts: An agency or governmental body wrongfully issues a permit to plaintiff, then realizes its error and revokes the permit. Plaintiff brings suit, arguing that the agency or governmental body should be equitably estopped from revoking its permit. *Scanlon* and *Metromedia* rejected plaintiffs' estoppel claims, but *Drury Displays* held that estoppel applied and ordered the reissuance of plaintiff's permit.

¶ 27    In *Scanlon*, plaintiffs received building permits from the Village of Oak Lawn. Relying on those permits, plaintiffs purchased real estate and began excavation. The village then

determined that the permits were improperly issued and revoked them. *Scanlon*, 57 Ill. App. 3d at 650-51. In the ensuing suit, plaintiffs argued that the village should be estopped from taking such action, but the *Scanlon* court rejected that argument, reasoning that the improperly issued permits were nullities. *Id.* at 653-54.

¶ 28    In *Metromedia*, plaintiff applied for and received two sign permits from IDOT. IDOT then discovered that plaintiff's applications were defective, since plaintiff failed to attach a lease as required by IDOT regulations, and one of the permits was for a sign within 500 feet of a previously approved sign. Thus, IDOT revoked the permits. *Metromedia*, 152 Ill. App. 3d at 464-65. In rejecting plaintiff's estoppel claim, *Metromedia* recited the proposition that an unauthorized permit is a "nullity" (*id.* at 467) but did not rely on it. Rather, the court concluded after careful analysis that the elements of estoppel were not met, since plaintiff made no expenditures in reliance on the permits and any reliance would have been unreasonable in light of plaintiff's knowing disregard of IDOT regulations. *Id.* at 468.

¶ 29    By contrast, in *Drury Displays*, 306 Ill. App. 3d 1160, plaintiff received a sign permit from IDOT and then spent over $49,000 to demolish the existing structure and construct a billboard. After construction was complete, IDOT discovered that plaintiff's sign was within 500 feet of a preexisting sign and revoked plaintiff's permit. The *Drury Displays* court found that IDOT was estopped from revoking plaintiff's permit as a matter of law, since IDOT induced plaintiff to construct the billboard by issuing the permit and, unless the permit was reissued, plaintiff would suffer a substantial loss. *Id.* at 1165-67.

¶ 30    In light of *Drury Displays*, we find the proposition that an improperly issued permit is a "nullity" (see *Scanlon*, 57 Ill. App. 3d at 653; *Metromedia*, 152 Ill. App. 3d at 467) to be questionable at best. It is apparent that, under appropriate circumstances, even a permit that was

unlawful when issued may confer rights upon the recipient. To the extent this conclusion cannot be reconciled with *Scanlon*, we choose to follow *Drury Displays* as the better-reasoned case. Moreover, *Scanlon* and *Metromedia* (and *Drury Displays*, for that matter) do not consider the impact of an unlawfully issued permit on a third party who may also be applying for a permit; all three cases are concerned solely with the rights of the permit recipient vis-à-vis the issuing governmental body. For all these reasons, we do not find that *Scanlon* and *Metromedia* support Shout's contention that the unlawful Chicago Avenue sign cannot be taken into account in ruling on Shout's permit application.

¶ 31　　　　Shout next argues that, just as the *Drury Displays* court allowed two billboards to coexist within 500 feet, we may do the same here. But *Drury Displays* was based on the court's finding that IDOT was equitably estopped from revoking an already-issued permit. Here, Shout has not shown that it undertook any expenditures in reliance on IDOT's actions, nor would any such reliance be reasonable, since IDOT never issued Shout a permit. In the absence of estoppel, the only grounds Shout proffers for granting such relief is its interpretation of the Act, with which we do not agree.

¶ 32　　　　Shout additionally argues, as a matter of policy, that it is both unfair and contrary to common sense to allow an unlawfully issued permit to block the issuance of a permit for an otherwise lawful sign. We are not unsympathetic to this argument. IDOT erred in 2002 when it improperly approved the Chicago Avenue sign, and now Shout, through no fault of its own, is forced to bear the cost of that mistake. If we were deciding this case upon a blank slate, we might reach a different result. But, as noted, IDOT enjoys "wide latitude" (*Hartney Fuel Oil*, 2013 IL 115130, ¶ 38) in adopting regulations to implement the Act, and we do not find that the

regulation at issue contravenes the text of the Act. Accordingly, Shout's policy argument does not provide us grounds for reversal.

¶ 33    Finally, Shout contends that IDOT has an independent obligation under the Act to "address" the illegality of the Chicago Avenue sign, presumably by revoking its permit. But in its prayer for relief, Shout does not ask that we order IDOT to take any such action, nor did it request any such relief in the trial court. Shout additionally concedes in its reply brief that "whatever happens between the Chicago Avenue Sign owner and IDOT is between them and does not involve Shout." Thus, we do not reach this contention.[3]

¶ 34                           CONCLUSION

¶ 35    For the foregoing reasons, we affirm IDOT's denial of Shout's permit application.

¶ 36    Affirmed.

---

[3] We note in passing that section 10 of the Act (225 ILCS 440/10 (West 2016)) sets forth notice requirements and procedures for IDOT to remove unlawful signs, but it does not require IDOT to take action, except as follows: "If the name and address of the owner of the sign cannot be ascertained from the records of the Department or from a visual inspection of the sign foregoing notice provisions are not required and the Department *shall take immediate action* to remove or paint over the sign." (Emphasis added.) Presumably, IDOT has records of the name and address of the Chicago Avenue sign owner, so this provision does not apply here.

---

**No. 1-18-2522**

---

| | |
|---|---|
| **Cite as:** | *Shout Outdoor Media, LLC v. Department of Transportation*, 2019 IL App (1st) 182522 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-1605; the Hon. Thomas R. Allen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sanford M. Stein and Lawrence W. Falbe, of Miller, Canfield, Paddock and Stone, PLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Caleb Rush, Assistant Attorney General, of counsel), for appellees. |

---