*In re* ESTATE OF J.M., an Alleged Disabled Person (Legal Advocacy Service, Counsel for J.M., Sanctions Petitioner-Appellant, v. Law Offices of Nye and Associates, Ltd., Sanctions Respondent-Appellee).

First District (3rd Division)   No. 1—95—3171

Opinion filed March 5, 1997.

John B. Lower, of Legal Advocacy Service, of Chicago (Laurel White-house and William E. Coffin, of counsel), for appellant.

Sandra G. Nye, Jonathan D. Nye, and Eugenia Miller Gillespie, all of Nye & Associates, Ltd., of Chicago, for appellee.

Terrie A. Rymer, of Chicago, guardian *at litem.*

JUSTICE CAHILL delivered the opinion of the court:

We review a trial court order that denied a petition for sanctions under Supreme Court Rule 137 (135 Ill. 2d R. 137). Legal Advocacy Service (LAS) filed the petition against the lawyers who represented

the father of a person alleged to be disabled under section 11a—2 of the Probate Act of 1975 (755 ILCS 5/11a—2 (West 1994)). We affirm.

On May 27, 1994, J.M., 18 years old, was admitted to Forest Hospital under an order of detention from the circuit court of Cook County. On May 31, 1994, J.M.'s parents consulted with Sandra D. Nye, a partner in the Law Offices of Nye and Associates, Ltd. J.M.'s parents told Nye that they were frantic about their daughter's situation, since insurance coverage for in-patient care would soon run out.

On May 31 or June 1 Sandra Nye consulted with Dr. Milton Kanter, J.M's treating psychologist, and reviewed J.M.'s mental health records. Sandra Nye and Jonathan Nye (also an attorney at the firm) then spoke with Dr. Howard Klapman, J.M.'s treating psychiatrist, sometime before June 7, 1994. Based upon Dr. Kanter's and Dr. Klapman's concerns, Sandra Nye concluded that guardianship appeared to be appropriate for J.M.

Dr. Klapman prepared a physician's report on June 7, 1994, while J.M. was still at Forest Hospital. He talked to Sandra Nye about the contents of his report and sent the report to her the same day. Dr. Klapman's report recommended that J.M. receive long-term hospitalization followed by long-term residential treatment. The report also stated that J.M. was chronically suicidal and episodically homicidal. Klapman concluded that J.M. was incapable of making responsible personal or financial decisions because of her poor reality testing, grandiosity, sense of entitlement and impulsivity. The doctor reported that J.M. refused medication and could not make rational decisions about her treatment and need for medication because of a lack of insight into the nature and consequences of her illness.

Dr. Klapman and Sandra Nye also discussed J.M.'s need for psychotropic medication. Dr. Klapman believed, on June 7, that a medication plan might benefit J.M. Later, at the sanctions hearing, he testified that he did not believe J.M. required involuntarily administered medication at the time she was released from the hospital on June 15. He also testified that she needed to be "stabilized" and that filing a guardianship petition on June 10 seemed to have a therapeutic affect on her.

Sandra Nye told J.M.'s father, sometime before the petition for plenary guardianship petition was filed, that she would feel better about filing for guardianship if J.M. were examined by an independent psychiatric expert. J.M. agreed to be examined, and Dr. Edward Wolpert examined her on June 13, 1994.

On June 10, 1994, before Dr. Wolpert examined J.M., Nye and Associates filed a petition for the appointment of a plenary guardian. Nye and Associates did not attach Dr. Klapman's report to the petition and did not request a court-ordered evaluation in the petition.

Sometime after June 13, but before June 21, Sandra Nye spoke to Dr. Wolpert about his evaluation of J.M. He told Sandra Nye that he believed guardianship was appropriate because he suspected that J.M. was mentally ill and could not make responsible decisions. He also told her that J.M. might benefit from psychotropic medication to help her through acute distress at different times. He believed that J.M. might need medication on a continuous basis as well.

On June 13, 1994, two days before J.M.'s release from Forest Hospital, Nye and Associates filed a petition for psychotropic medication alleging that: "medication is the only viable treatment for [J.M.'s] condition"; her "prognosis without medication is dismal"; only with medication would she "be able to return to normal or near-normal functioning"; and "[l]ess restrictive services have been explored and have been of no effect."

Terrie Rymer, court-appointed guardian *ad litem* by an order entered June 30, testified at the sanctions hearing that Dr. Klapman told her J.M's condition did not require involuntarily administered medication and that Dr. Klapman did not intend to force medication. The date of this conversation is not in the record. Rymer stated that Dr. Klapman told her he assumed the petition for psychotropic medication was filed in the event medication was required.

On June 15, Dr. Klapman released J.M. to live with a friend's family and attend an out-patient program at Forest Hospital. Dr. Klapman testified that J.M. was not placed in long-term residential treatment as he recommended in his report because of a lack of funding from her insurance company. However, he added that discharge and placement in the out-patient program were not against his medical advice since J.M. had shown improvement.

On June 21, 1994, six days after J.M.'s release, Nye and Associates filed a petition for temporary guardianship. The petition alleged that J.M required immediate appointment of a temporary guardian. That petition alleged that she was unable to make responsible decisions for her care and welfare, had refused medication, and that she would lose insurance benefits because of her alleged refusal to release records to her insurer. Also on June 21, Nye and Associates filed the physician's report prepared by Dr. Klapman, which was not dated. At the sanctions hearing Dr. Klapman testified that the report was prepared on June 7.

J.M.'s father testified at the sanctions hearing that J.M. ran away from the family with whom she had been living on or about July 13. Jonathan Nye testified that sometime after July 13, J.M.'s father directed Nye and Associates to stop legal proceedings. The father told Nye he no longer had the financial or emotional resources

to continue the fight. Mr. Nye stated that he believed he needed a doctor's report that concluded that J.M. was not in need of guardianship to obtain a court ordered dismissal of the petitions.

Jonathan Nye telephoned Dr. Klapman shortly after J.M.'s disappearance and asked him to prepare a second physician's report indicating that J.M. no longer required a guardian. Dr. Klapman refused. A few days later, Mr. Nye again asked Dr. Klapman to prepare such a report. Dr. Klapman again refused.

LAS filed a motion to dismiss the petitions on August 3, 1994. The same day, LAS filed a petition for sanctions and later amended it. The amended petition for sanctions was filed on behalf of LAS and asked that Rule 137 sanctions be imposed against Nye and Associates for the firm's failure to comply with Rule 137 before the filing of each petition.

On September 8, 1994, the court entered an agreed order dismissing the substantive petitions and reserved ruling on the sanctions request.

At the sanctions hearing both parties presented expert testimony about the kind of investigation an attorney must conduct before filing guardianship petitions. John Wank, Director and Chief Counsel of the Office of State Guardian, a division of the Illinois Guardianship and Advocacy Commission, testified on behalf of LAS. Sandra Nye, a former Director of the Illinois Guardianship and Advocacy Commission, testified as an expert on behalf of her law firm.

Nye and Associates moved for a directed verdict after LAS presented its case. The court denied the motion.

At the conclusion of the hearing the trial court found that Nye and Associates had not violated Supreme Court Rule 137.

The proper standard of review is whether the court's finding is against the manifest weight of the evidence. *Sajdak v. Sajdak*, 224 Ill. App. 3d 481, 586 N.E.2d 716 (1992).

■ Supreme Court Rule 137 states, in part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law, and that is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court *** may impose *** an appropriate sanction ***." 155 Ill. 2d R. 137.

The rule is penal in nature and must be strictly construed. Each element of a violation must be specifically proved. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 621 N.E.2d 77 (1993).

The trial court found that Nye and Associates made reasonable inquiry into the facts of the case, given the nature of the proceedings, and found that Nye and Associates did not file the petitions for an improper purpose.

■ LAS first argues that the trial court erred by creating a general exception to Rule 137 for mental health cases. In support of this allegation, LAS points to the court's language in its order denying sanctions:

"[W]e conclude that what may generally constitute 'reasonable inquiry' into facts in other than mental health cases should not be construed to apply to mental health cases in which there is a greater uncertainty about facts, changes often on a day-to-day basis—because of the fluid dynamics in the mood, behavior, refusal to cooperate, dangerous propensities toward self and others, and unpredictable mood swings of the patient."

LAS reads the court's words to mean the court created an exception to reasonable inquiry for mental health cases. A reading of the full order makes it clear that the trial court applied the exact language of Supreme Court Rule 137 to the facts of the case. We believe a fair reading of the court's language is that the circumstances of any proceeding are relevant to the issue of reasonable inquiry. This is true in all Rule 137 inquiries. A court must consider reasonableness based upon the circumstances at the time the pleading was filed. *Shea, Rogal & Associates, Ltd.*, 250 Ill. App. 3d at 153; *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 570 N.E.2d 361 (1991).

■ LAS argues that if the trial court did not create a separate standard and err as a matter of law, then the facts here support the imposition of sanctions and the failure to impose them is an abuse of discretion.

Nye and Associates produced sufficient evidence from which a court could conclude that it made reasonable inquiry before each filing. Nye and Associates did not rely on J.M.'s parents' representations. They talked to two of J.M.'s treating doctors and reviewed J.M.'s medical records before filing the first petition for plenary guardianship. The record also established that Sandra Nye received a copy of Dr. Klapman's report and discussed it with him before she filed the first petition. Sandra Nye then spoke with J.M.'s parents and the treating doctors numerous times after the first filing, and

referred J.M.'s parents to a second psychiatrist for yet another opinion after the filing of the first petition.

The petition for involuntary medication was filed on June 13, six days after Dr. Klapman prepared his report concluding J.M. needed medication for her condition. However, Dr. Klapman testified at the hearing that he did not believe J.M. needed involuntary medication at the time of her release on June 15. The record does not divulge whether this opinion was communicated to Nye and Associates.

The temporary guardianship petition was filed on June 21, six days after J.M.'s release from the hospital and three weeks after Dr. Klapman prepared his report. At the heart of LAS's argument is that the release of J.M. on June 15 was a change in circumstances sufficient to overcome the physicians' reports and evaluations made between June 7 and June 15. Dr. Klapman's testimony indicates that he never changed his recommendation of guardianship for J.M. even though she had been released from the hospital on June 15. The record reveals that J.M.'s release from the hospital, though not against medical advice, was motivated in part by circumstances that had nothing to do with J.M.'s then mental state: insurance.

We see no reason why Nye and Associates could not reasonably rely on J.M.'s treating doctor's report to support the filing of each petition.

■ Additionally, LAS argues that an attorney has an obligation to promptly dismiss a lawsuit when it is determined to be baseless. *Shea, Rogal & Associates, Ltd.*, 250 Ill. App. 3d at 153. LAS argues that once J.M.'s condition improved, the physician's report became invalid and the petitions for guardianship were baseless. The only expert testimony offered contradicts this conclusion. Dr. Klapman stood by his report of June 7 after J.M.'s improvement. Dr. Klapman twice refused to alter his conclusion that J.M. needed a guardian even after her release from in-patient treatment. The record adequately shows that the petitions were not baseless, nor did they automatically become so because J.M. was released from the hospital.

■ LAS also argues that when J.M.'s father asked that the petition be dismissed, Nye and Associates had a duty to promptly dismiss the suit. *Chiappetti v. Knapp*, 20 Ill. App. 3d 538, 542, 314 N.E.2d 489 (1974); 134 Ill. 2d R. 1.16.

Jonathan Nye testified that he understood that he would need a physician's report stating that guardianship was no longer necessary to dismiss the petitions. He twice asked Dr. Klapman to amend his report. The doctor refused. But Jonathan Nye told LAS that if they moved for dismissal he would not object. Nye and Associates did not pursue the petitions after the request of J.M's father. Given the

above facts, the record does not support a violation of Rule 1.16 of the Rules of Professional Conduct nor does it support grounds for imposition of Rule 137 sanctions.

■ LAS also argues that the petitions were filed for an improper purpose: to intimidate J.M. into behaving in a certain way. LAS points out that J.M.'s parents were "frantic" when they came to Nye and Associates, that Dr. Klapman stated that her parents had "no control over J.M." before the petitions were filed, and that the proceedings seemed to have a "therapeutic affect on J.M." If the concerns of the parents were the sole basis for the legal proceedings undertaken, LAS's argument might carry some weight. But here are the conclusions of Dr. Klapman in the June 7 report:

> "[J.M.] suffers from severe borderline personality disorder with narcissistic, depressive, paranoid and antisocial features and low self-esteem; is chronically suicidal and episodically homicidal, exhibits grandiose thinking and a sense of absolute entitlement. Recently, she obtained a gun and attempted to locate ammunition."

Given this diagnosis, placed in the hands of an attorney experienced in these proceedings, the claim of an improper motive on the part of the parents is less than persuasive.

■ LAS next contends that the trial court erred in finding compliance with Rule 137 because Nye and Associates did not meet their burden of proof and did not overcome LAS's *prima facie* showing of their sanctionable conduct. LAS argues that once the court denied Nye and Associates' motion for a directed verdict at the close of LAS's proofs, the court implicitly found that LAS established a *prima facie* case. The burden of proof then shifted to Nye and Associates to prove compliance with the rule.

LAS is incorrect. When the trial court rules on a motion for a directed verdict, all reasonable inferences and issues of credibility are resolved in the plaintiff's favor. *Hays v. Country Mutual Insurance Co.*, 28 Ill. 2d 601, 605, 192 N.E.2d 855 (1963). However, "burden of proof" means the plaintiff has both the burden of producing evidence, as well as the burden of persuading the trier of fact that certain facts are true. The burden of persuasion remains with the plaintiff throughout the proceeding. Once the plaintiff establishes a *prima facie* case, only the burden of production shifts to the defendant. *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 462, 448 N.E.2d 872 (1983).

While LAS established a *prima facie* case when the directed verdict was denied, the record supports a finding that Nye and Associates met the burden of production.

Last, LAS argues that if we find that Nye and Associates violated Rule 137, we should impose sanctions rather than remand. In light of our decision, we need not address this issue.

Affirmed.

HOFFMAN, P.J., and O'BRIEN, J., concur.